Harryetta BUTCHER (plaintiff) Appellant,

v.

Hiram H. MAIN, Jr., Olon E. O'Connor, and Madeline Mary Politte, (Defendants) Respondents.

No. 49871.

Supreme Court of Missouri,

Division No. 1.

Oct. 14, 1963.

**204**

Sherman Landau, St. Louis, for appellant.

Carter, Fitzsimmons & Brinker, Paul E. Fitzsimmons, Clayton, for respondent Main.

Murphy & Kortenhof, Joseph M. Kortenhof, St. Louis, for respondent, Olon E. O'Connor.

Wilburn A. Duncan, Robert T. Ebert, St. Louis, for respondent Madeline Mary Politte.

HOLMAN, Judge.

In this action plaintiff sought to recover damages for personal injuries in the sum of $27,500 from the defendants. At the close of plaintiff's opening statement the defendants O'Connor and Politte moved for a directed verdict and their motions were sustained. Thereafter, a jury returned a verdict in favor of plaintiff and against defendant Main in the sum of $1,000. Plaintiff appealed and here contends (1) that the court erred in directing a verdict for defendants O'Connor and Politte, and (2) that the verdict is inadequate. We have jurisdiction because the amount in dispute in this instance is $26,500. Art. V, Sec. 3, Constitution of Mo., V.A.M.S.; Sec. 477.040 RSMo 1959, V.A.M.S.; Pinkston v. McClanahan, Mo.Sup., 350 S. W.2d 724.

The collision in question occurred at about 3:30 p. m. on June 18, 1960, on Highway 66 bypass in St. Louis County. This north-south highway has four traffic lanes, two for traffic proceeding in each direction. The sun was shining and the roadway was dry. Plaintiff and the three defendants were each operating northbound automobiles in the lane next to the center line. Miss Politte's car was directly in front of plaintiff, and Mr. O'Connor was operating the car in front of Miss Politte. Mr. Main's automobile was following plaintiff's car. The collision occurred approximately 150 to 200 feet north of where the highway intersects Big Bend Boulevard. It appears from the transcript that defendant O'Connor brought his automobile to a sudden stop in the line of traffic in which all of these cars were traveling, and that Miss Politte's car ran into the back of his car; that plaintiff stopped her car without striking the Politte car, but that Mr. Main's car ran into the rear of plaintiff's car and knocked it into the rear of the Politte car. Shortly thereafter, a patrolman had the parties remove the cars to a nearby parking area, took their statements, and then released each of the drivers.

Plaintiff testified that she was 49 years old at trial time, married, and the mother of two children; that she is a registered nurse and on the date of the collision was

employed at the Veterans Administration Hospital at an annual salary of $5,020; that she had worked on Saturday, June 18, and was driving home on Highway 66; that when she passed through the intersection at Big Bend Boulevard she was going 15 miles per hour; that shortly thereafter she saw the brake lights go on on the car ahead and she made a gradual normal stop of her car, with the front end thereof about five or six feet behind that car; that the car of defendant Main which was following her then struck the rear of her car and knocked the front end of her car into the rear of Miss Politte's car; that when her car was struck she was thrown against the steering wheel and then back against the seat of the car and "my neck was jerked"; that the front fender and bumper of her car were damaged but it was "driveable" and she drove it home after the officer completed his investigation.

Plaintiff further testified that when she arrived home she went to bed, and on the next day, Sunday, called her doctor and obtained some medicine to relieve her pain; that on Monday she went to Dr. McCall's office for examination and treatment, and he had her get a Thomas collar; that Dr. McCall sent her to Dr. Merenda who took a number of X rays; that she continued to have pain in her neck and back, and shortly thereafter went to Dr. Goodman, a chiropractor, who gave her some treatments; that she returned to work on June 27, and continued to work regularly until April 15, 1961; that at the Veterans Hospital she received physical therapy treatments consisting of intermittent traction, diathermy and massage for three weeks. In December 1960 she went to Dr. Rosenberg who gave her supersonic sound wave treatments from which she obtained temporary relief; that at trial time she still had pain in her neck and shoulders, headaches, and a constant aching pain in the low back region which varied in intensity; that she quit work on April 14, 1961, but went back on September 5 on a part-time basis (worked seven out of each fourteen days); that

she quit work altogether on December 24, 1961, and had not worked from that date until the time of trial which was in October 1962.

Plaintiff's husband, Allen Butcher, testified that since his wife's injury she at times could not do many of the things she had previously done around the house; that she frequently complained of pain in her back and would apply heat in order to obtain relief; that she had not been able to bowl, or to ride for any prolonged period in an automobile, without discomfort. This witness also described the damage done to their car, but stated that except for the taillights the car was not repaired and was later traded in on another car.

Dr. Paul Rosenberg, an osteopath, testified that plaintiff came to his office on December 14, 1960, complaining of severe pain in her neck, and of headaches; that he examined the patient and took X rays and made a diagnosis of traumatic subluxation of the third and fourth lumbar vertebrae, and a traumatic subluxation of muscular tissue surrounding the cervical vertebrae; that he examined her again shortly before the trial and was of the opinion that she would have permanent intermittent pain in the cervical region.

Dr. E. L. McCall testified that he examined plaintiff on June 20 and found that she was suffering from a cervical sprain; that he prescribed a Thomas collar and traction (neck stretching) exercises; that he saw her again on October 7, 1960, and she seemed to be improved; that she came to his office again on November 10, 1960, and complained of low back pain which he attributed to inflammation of the back muscles. In answer to a hypothetical question this witness expressed the opinion that the injuries received by plaintiff in the collision were "causative factors in the woman's complaints."

Defendant Main's evidence consisted of his personal testimony and the testimony of Dr. Ries who examined plaintiff for the defendant before trial. Mr. Main testified

that on the day in question he was driving a station wagon, from 20 to 30 miles per hour, on Highway 66 bypass and as he crossed Big Bend his car was 100 feet behind plaintiff's car. He stated that he heard skidding and flying glass ahead and that plaintiff suddenly slowed her car and he collided with it; that plaintiff's automobile was still moving some at the time of the collision.

Dr. Ries testified that he was a physician specializing in general and traumatic surgery; that he examined plaintiff shortly before the trial and his examination disclosed no objective finding of abnormality which he could attribute to injury; that he examined certain X rays of defendant taken by Dr. Funsch and they disclosed no abnormalities; that he had found a mild narrowing between cervical vertebrae five and six, but that such would be found in most people over 40 years of age; that he had found no muscle spasm in the neck, and his examination had disclosed no objective reason why plaintiff could not perform her duties as a housewife or as a nurse.

We will first consider plaintiff's contention that the court erred in directing a verdict for defendants O'Connor and Politte at the close of plaintiff's opening statement. It is her theory that "the mere insufficiency of the opening statement to recite facts which would show that plaintiff's anticipated evidence would, as a matter of law, present a submissible case, was not of itself standing alone sufficient justification to stop the case at that stage and direct a verdict for the two co-defendants."

The portion of the opening statement these defendants say would preclude any recovery by plaintiff against them is as follows: "And at that point the lead automobile, which was operated by a Mr. O'Connor, made a very sudden and abrupt stop right in that lane directly in front of these other following northbound automobiles without any signal except that which was provided by the instantaneous flash by the stop signals at the rear, * *

and Miss Politte's car rammed into the back end of Mr. O'Connor's car. Mrs. Butcher, coming along at the reduced rate of speed, had ample time to apply her brakes and come to a slow gradual stop at a point about five or six feet behind Miss Politte's automobile, and she remained in that position for a period of about five to ten seconds according to her approximation, and all of a sudden she was struck violently in the rear with sufficient force to knock her automobile into the rear of Miss Politte's automobile. * * * It developed that this rear car was operated by a Mr. Main."

In our recent case of Hays v. Missouri Pac. R. Co., Mo.Sup., 304 S.W.2d 800, 803, 804, we considered a contention similar to plaintiff's and stated that "[t]he primary purpose of an opening statement is not to test the sufficiency of plaintiff's anticipated evidence, but is to inform the judge and the jury in a general way of the nature of the action so as to enable them to understand the case and to appreciate the significance of the evidence as it is presented. * * * Therefore, generally the opening statement is not expected to contain all or necessarily even a major part of a party's case. * * By reason of these well accepted and basically sound principles, it is readily apparent that mere insufficiency of the opening statement to recite facts which show that plaintiff's anticipated evidence would, as a matter of law, present a submissible case, is not of itself standing alone sufficient justification to stop the case at that stage and direct a verdict for the defendant." However, "a trial court may direct a verdict in favor of the defendant on plaintiff's opening statement * * * when counsel makes an admission in his opening statement which affirmatively demonstrates as a matter of law that his client has no cause of action or is not entitled to recover on his cause of action."

■ Our general view is that courts should be very reluctant to direct a verdict at the close of plaintiff's opening statement. It certainly should not be done be-

cause of the mere failure to state facts sufficient to constitute a submissible case unless counsel affirmatively admits that no additional facts will be shown by the evidence. A different situation is presented when the statement of counsel affirmatively discloses, as a matter of law, that plaintiff is not entitled to recover. However, the principal difficulty encountered in that situation is the determination as to whether the statement is an admission or is merely a recital of the facts counsel expects to prove. See Wasmer v. Missouri Pac. Ry. Co., 166 Mo.App. 215, 148 S.W. 155, Fillingham v. St. Louis Transit Co., 102 Mo.App 573, 77 S.W. 314, and Bayer v. American Mutual Casualty Co., Mo.Sup., 359 S.W.2d 748[5], [6].

■ We are convinced, however, that the trial court did not commit prejudicial error in directing the verdicts in the case at bar. In arriving at that conclusion we have considered the fact that plaintiff alleged in her petition that "she slackened the speed of her automobile in a gradual and normal manner for the purpose of bringing her automobile to a stop behind the two aforesaid automobiles which were stopped ahead of her on said highway" and that "after the speed of plaintiff's automobile had been decreased substantially below normal operating speed in a gradual and normal manner, and had been brought to, a stop behind the automobile operated by defendant Madeline Mary Politte, plaintiff's automobile was struck at the rear * * *." The quoted allegation in plaintiff's petition, and the similar recital of her counsel in the opening statement, disclose a situation which would clearly bar her recovery. While it may be assumed that defendants O'Connor and Politte were negligent, it may be said as a matter of law that such negligence was not a proximate cause of plaintiff's injuries. Since plaintiff was able to bring her car to a gradual normal stop without colliding with the car ahead, it is obvious that the efficient, intervening cause and the proximate cause of plaintiff's injuries is the fact that defendant Main's car collided with the rear end of plaintiff's car. King v. Ellis, Mo.Sup., 359 S.W.2d 685; Branstetter v. Gerdeman, 364 Mo. 1230, 274 S.W.2d 240. The factual situation heretofore discussed was unquestionably plaintiff's theory of the case and she is bound by it. As indicated, she alleged those facts in her petition, her counsel stated them in his opening statement, and plaintiff later testified to that precise state of facts in the trial. In that situation, as previously stated, the court did not prejudicially err in directing the verdicts in question.

Plaintiff does not contend, merely because of the amount thereof, that the verdict was so inadequate that a new trial should be granted. Instead, she argues that she received an inadequate verdict as the result of certain trial errors. It is first said that the error in directing a verdict in favor of two of the defendants adversely affected the size of the verdict. Since we have held that the court did not err in that respect we need not further consider this contention.

■ The next alleged trial error is the contention that the court permitted defendant's counsel to argue foreign issues relating to damages. That contention is based upon the following: "By Mr. Fitzsimmons: And I might say this, too. What are you to consider if you do get to that issue of the amount of her damages? There is nothing that you consider about damages to her automobile, there is nothing to consider about any medical bills, there is nothing to consider about any claim her husband would have. Those are all secondary questions and may be the result of a secondary—another lawsuit. Mr. Landau: If the court please, I object to that. May I make a record? The Court: Yes, sir. (Thereupon, the following proceedings were had out of the hearing of the jury at the bench.) Mr. Landau: I object to the reference to the husband's cause of action as injecting a false issue into this case, and I object to the reference to medical bills as

injecting a false issue into this case. There has been no evidence as to either of those factors before this jury at any time and the injection of those misleading alleged factors are prejudicial to plaintiff and we ask for a mistrial and a discharge of the jury. The Court: Overruled."

It is true, as plaintiff says, that she did not seek a recovery in her petition for damages to the car or for medical expenses, and, her husband could not recover for her loss of service because he was not made a party to this action. However, we note that there was considerable testimony concerning the damage to the car (admitted apparently on the theory that it tended to prove the violent nature of the collision), and plaintiff's husband testified concerning the inability of plaintiff to do many household duties. In that circumstance, the jurors might have thought that those items should be considered in determining damages, and it is not unreasonable for defendant's counsel to contend that the jury should have been told that such were not proper elements of damage. See O'Brien v. City of St. Louis, Mo.Sup., 355 S.W.2d 904[6]. In any event, however, it is well established that the trial judge should be allowed large discretion in permitting or restraining argument and his ruling will generally be deferred to on appeal. Satterfield v. Southern Ry. Co., Mo.App., 287 S.W.2d 395. We rule that the trial court did not abuse its discretion in overruling the foregoing objection.

■ Plaintiff testified that the reason she resigned from her employment on April 15, 1961, and again on December 24, 1961, was that "being on my feet too much * * * seemed to aggravate the symptoms I had had." She also stated that "the reason I left, and the reason given, are different because you do not want a medical disability against your record." On cross-examination she admitted that the reason she gave to the Veterans Administration Hospital on each occasion was "personal responsibilities at home becoming too great pressure to carry on with ease full time job outside of the home." In that regard she further testified to the following: "A. That's on the records both times that I resigned from the V. A. administration. Q. Did I understand you to tell the jury why you put that on the federal records that wasn't your real reason for resigning? A. For any reason for resigning, if you have a medical defect— Q. Well, if I may ask, was that the real reason for resigning that you put there? Mr. Landau: I object to the interruption of the witness and ask that she be permitted to complete her answer. The Court: It wasn't responsive. A. Would you please restate your question. Q. (by Mr. Fitzsimmons) : ' So far as the records at the Jefferson Barracks Veterans Administration Hospital what I read to you there, 'personal responsibilities at home becoming too great pressure to carry on with ease full time job outside of the home,' is that what is on the official federal records of this hospital? Mr. Landau: I object to that for the reason that the records themselves would be the best evidence of their contents. * * * The Court: Well, this is cross-examination. I am overruling the objection. A. That is on the records."

Plaintiff's counsel contends that the court erred in not sustaining his objection to the interruption of plaintiff and that she was thus denied the right of explaining her reason for not giving her employer her real reason for resigning. Since plaintiff fully explained, on direct examination, the reason she did not give the hospital her real reason for resigning, we are of the opinion that the ruling complained of would not constitute prejudicial error.

■ Just prior to resting plaintiff's case her counsel announced that he desired to recall plaintiff for further direct examination. The court sustained an objection to his being permitted to do so. Counsel made no offer as to what he proposed to prove by such further testimony. He now says in the brief that he desired to have plaintiff explain her reason for giving an incorrect

reason to the hospital for her resignations. Since, as heretofore stated, she had already given that explanation on direct examination, and since counsel made no offer of proof at the time, we rule that no prejudicial or reversible error occurred.

 The final contention of error, which plaintiff says adversely affected the amount of her verdict, occurred during the argument of her counsel, as shown by the following: "Mr. Landau: She lost a total of over $8,000.00. Mr. Fitzsimmons: I object. I don't think there is any evidence at all of what her lost wages were and I ask the jury be instructed to disregard that. The Court: Objection sustained. The jury is so instructed to disregard it." We think the objection and ruling indicate that counsel for defendant and the court had in mind that no witness had made any mathematical calculation as to any amount of wages plaintiff had lost. No witness had made any such calculation.

In the damage instruction plaintiff was permitted to recover for loss of earnings and there was evidence to support some recovery upon that element of damages. However, there is no evidence that would have warranted a recovery for any amount approximating the sum of $8,000 in lost earnings at trial time. Plaintiff lost seven days' work immediately following the collision. Thereafter, she worked regularly for almost ten months. Her explanation of the reason she resigned was that she was on her feet too much "and that seemed to aggravate the symptoms she had had." That testimony is not sufficient to support a recovery of a sum equal to what her full wages would have been following her resignations. She did not say she could not continue to work. The fact she had worked for ten months would indicate she could. The most favorable view of that evidence is that working caused her to suffer some pain and discomfort. Moreover, even if we should assume that she was entitled to recover all wages lost the amount thereof would not have exceeded $6,700.

In view of the foregoing we have concluded that the trial court did not commit prejudicial error in sustaining the objection to the statement heretofore quoted.

We have determined that none of the alleged trial errors complained of by plaintiff affected the verdict adversely to her. It would therefore seem apparent that the jury did not believe the evidence offered by plaintiff relating to the extent of her injuries and disability, but chose to accept the testimony of defendant's expert who found no objective condition which would disable plaintiff in her work, either as a housewife or as a nurse. That was the prerogative of the jury, as it is its duty in a case of this kind to determine the fact issues and assess the amount of the damages.

The judgment is affirmed.

All concur.