Leslie SWINDLER, Appellant,

v.

BUTLER MANUFACTURING COMPANY,
a Corporation, Respondent.

No. 52985.

Supreme Court of Missouri,
Division No. 1.

April 8, 1968.

Edward L. Simmons, and Russell D. Jacobson, Kansas City, for appellant.

Gene C. Morris, of Rogers, Field & Gentry, Kansas City, for respondent.

WELBORN, Commissioner.

Appeal by plaintiff from judgment in favor of defendant at close of plaintiff's opening statement on trial for $50,000 damages for personal injuries. A prior appeal was found to be premature because the judgment appealed from did not dispose of all questions and parties. See Swindler v. Gross, Mo.Sup., 395 S.W.2d 109. The claim against codefendant Gross has now been dismissed and the issue between plaintiff and defendant Butler is now properly before us.

This cause of action arose out of injuries sustained by appellant Swindler while employed on the Gross farm in De-Kalb County. On October 21, 1958, Swindler fell when a ladder on which he was standing slipped. He had climbed the ladder to observe the level of the contents of a bin into which feed processed on a Select-O-Mix Grinder was being conveyed. The petition charged negligence against the Grosses in failing to provide a safe place to work in that the floor on which the ladder had been placed was slick concrete, made more slippery by dust and feed particles which the grinding process produced. The petition also charged that the ladder was worn, cracked and broken, and otherwise unsafe.

The petition alleged that Butler was "engaged in the business of manufacturing machinery and other products, and specifically engaged in the manufacture of a machine designated by said defendant as a Select-O-Mix Grinder, which machine was offered for sale to members of the public by the defendant * * *."

Paragraph 6 of the petition stated plaintiff's claim against Butler as follows:

"6. States that defendant Butler Manufacturing Company was negligent in the manufacture and design of the Select-O-Mix Grinder in failing to equip said machine with a safe place for workmen to stand while operating said machine, and that defendant knew, or in the exercise of ordinary care should have known, that workmen would be working in close proximity to said machine and that such workmen would be likely to be injured, and of the dangers as aforesaid, prior to October 21, 1958, in time to have remedied said conditions; Defendant Butler Manufacturing Company was negligent in that it failed to instruct or to supply instructions to either defendants Gross and/or plaintiff herein for the installation and operation of the Select-O-Mix Grinder, and that the cause [sic] of * * * the design and manufacture of the grinder as aforesaid that such instructions were necessary in order that the installation and operation of said grinder be safely carried out, and that defendant Butler Manufacturing Company knew, or in the exercise of ordinary care should have known, that men would be working on and in close proximity to said grinder and therefore that such instructions should have been given, but that defendant Butler Manufacturing Company failed or omitted so to do."

Butler filed a general denial to plaintiff's petition. The plaintiff propounded interrogatories to Butler. Butler's answers asserted that it sold the Select-O-Mix Grinder to the Grosses; that the grinder was ordered, at the request of Gross, from the manufacturer, Belle City Engineering Company; that it was delivered directly to Gross; that none of Butler's employees installed or assisted in the installation of the grinder and that it gave no direction or instruction regarding the installation or operation of the grinder.

In his voir dire examination, plaintiff's counsel stated that Butler "did not manufacture but * * * sold and distributed and demonstrated a milling and grinding machine." Butler's motion for a directed verdict on the basis of such statement

alone was overruled. Thereafter, and prior to his opening statement, plaintiff asked leave to amend his petition to state in Paragraph 6 of his petition that Butler "was negligent in the manufacture and design of the Select-O-Mix Grinder, *or in selling said machine * * *.*" Butler's objection to such amendment was sustained.

Plaintiff's counsel then proceeded to make his opening statement. The following references to Butler were made:

" * * * [I]n the spring of 1958 Mr. Gross installed what they called a Select-O-Mix Grinder, a machine that grinds and mixes different grains and elevates them to different bins, the bins being up overhead in the building which had been constructed for that purpose, and from these bins the ground and mixed grain comes down and goes into a wagon and it is then taken out and fed to cattle and hogs.

"Mr. Gross got this machine from Butler Manufacturing Company here in Kansas City, Missouri. They had advertised it and displayed it and demonstrated it throughout the midwest here. I think the evidence is they showed it in Atchison, Kansas, and the Trimble-Minor farm, and places like that or of that nature. It was a new product they were selling to farmers, cattlemen and hogmen in this area. The Grosses saw it and went down there and got it and installed it. They built the building and put bins up above the machine into which the different kinds of grain was elevated by means of ducts and tubes. From these bins up above the grinder the grain would come down and mix and be ground into whatever formula was desired. They had some four tubes that would bring in four different kinds of grain which could be mixed and ground into different rations so that when they got through the grinding machine they had a ration for the cattle or other kinds of livestock.

"They installed this grinder and it is about three to four feet square and about that high (indicating), and all these pipes ran into it.

\* \* \* \* \* \*

" * * * Mr. Gross had gone to the Butler and got the machine after he had seen it displayed around the area. Then he took it up and installed it. This machine was solidly built. The sides were about three foot high by three foot wide and sort of a rectangular thing. They were of solid walls. There was no mirror or glass openings so that you could tell from this machine when the grain was coming in or if one of those bins was full, or anything of that nature. Mr. Gross solved this problem by making openings where the unground grain came in three or four inches square. Mr. Gross not only had this ladder there, but instead of using a square fitting to fit over the square hole he put a round pipe into the square hole.

\* \* \* \* \* \*

"This left an opening which he explained as having to leave it that way so he could see when the grain was coming down. Milo is grain that is round and hard like a ball bearing, and that spilled out onto the floor in this grinding process and the dust and the ground grain spilled out onto the floor. And that is where the ladder was set. At no time was there any other place provided for on this machine to show that the grain was moving through that thing other than these openings that were there.

\* \* \* \* \* \*

"There were no openings of any kind except the openings where this raw grain comes down, where a man could see that this grinder had grain to grind, or whether a pipe was clogged, or anything. Not only that, but there was no place provided on this machine for a man to stand while he was working in this vicinity where he would be free from this dust that was bound to come out of this machine grinding grain. The machine had to be anchored to the floor and all these pipes came to it. It was anchored in the concrete floor. It was anchored in such manner that this

pit, not only did it come to the west of it but it also extended along the south side of it, about half way along the south side, so you could put a ladder only at the extreme east edge of the machine. You couldn't work to the south because of the tractors coming through; and you couldn't work along the south of it because of the pit; and you couldn't work to the west of it because of the pit,—you had to have this ladder here (indicating). You couldn't have it too close to this three-foot pit because of the angle that angled it along the south side of the machine. So you are very limited there where this ladder had to be placed.

"At no time did Butler Manufacturing Company ever give anybody any instructions as to how to install this machine to provide for the safety of the people that had to use it to grind this grain. It was designed especially to grind grain which is known to have a high moisture content when it had been freshly harvested. They were bringing milo right straight in from the field. Not only that, there are vegetable oils, corn oil, and so forth,—they look dry on the outside but on the inside they have a high vegetable oil content. It is like a lubricant; they have oil and moisture in them. This machine was designed especially for this use and sold for this use. At no time did they give any instructions as to how to safely use it or install it. So that on the morning of the accident, the event in question, not only was he using this rickety ladder by this machine that had no opening to see whether or not the grain was going down, but this happened in October and they were, at the very time when Mr. Swindler was grinding, they were bringing in freshly harvested milo. Mr. Gross, the son, was actually in the field with the combine harvesting this milo that Mr. Swindler was grinding. The experts will tell us and I am sure you all know that freshly harvested grain has a larger moisture content and that one ton out of every four tons is water. That makes it extremely slick, falling out here on this slick concrete floor. This was the place Mr. Swindler was asked to grind grain in on that particular morning.

"There is another thing that the expert will explain to you, that freshly harvested milo, or any other grain, put in the bin last will come out of the bin first; the last grain in is the first grain out at the bottom. That is the principle we all see in the bath tub, you get a circular motion of the water and out it comes first. This freshly harvested milo was the very grain that he was grinding."

The statement also stated in some detail the charges against Gross, based largely upon the theory that the ladder which fell with plaintiff was defective.

At the close of plaintiff's opening statement, defendant Butler moved for a directed verdict in its favor on the grounds that, based upon plaintiff's opening statement and the admissions therein, plaintiff could not make a case against Butler. The trial court sustained the motion. This appeal eventually followed. The sole question on the appeal is the propriety of the trial court's ordering a directed verdict on plaintiff's opening statement.

In Hays v. Missouri Pacific R. Co., Mo. Sup., 304 S.W.2d 800, the court examined at length the practice of granting a directed verdict upon plaintiff's opening statement. The court there pointed out that there are two general situations in which such action is proper. "The first situation exists when counsel makes an admission in his opening statement which affirmatively demonstrates as a matter of law that his client has no cause of action or is not entitled to recover on his cause of action." 304 S.W. 2d 803 [1]. In this case, there was an admission that Butler was not, contrary to the allegation of plaintiff's petition, the manufacturer of the grinder. If that were the only theory upon which plaintiff might recover, that admission would be fatal to plaintiff's case.

However, plaintiff asserts that he was not bound to show that the grinder actually was manufactured by Butler. Plaintiff points out that the petition also alleges that Butler sold the grinder and argues that the facts stated by plaintiff did not preclude Butler's liability as a manufacturer or supplier of chattels. This argument involves the second category of situation referred to by the court in Hays v. Missouri Pacific R. Co., supra.

"The second situation is represented by those cases wherein the facts recited by plaintiff's counsel in his opening statement which he intends or expects to prove would not, as a matter of law, constitute enough when established by evidence to make a submissible case to go to the jury." 304 S.W.2d 804.

In this category of cases, the admonition frequently appears that the order of a directed verdict on an opening statement is a radical, harsh remedy, to be applied with great caution. Hays v. Missouri Pacific R. Co., supra, 304 S.W.2d 804; 88 C.J.S. Trial § 161, p. 322; Annotation: "Dismissal, Nonsuit, Judgment, or Direction of Verdict on Opening Statement of Counsel in Civil Action," 5 A.L.R.3rd 1405, § 3, pp. 1417–1418.

■ However, a litigant predestined to failure on the facts which form the basis of his claim has no right to burden the courts and the public with a necessarily futile presentation of evidence to establish such facts, and in such circumstances the obvious impossibility of recovery will justify the abrupt termination of his cause of action upon his counsel's opening statement. Butcher v. Main, Mo.Sup., 371 S.W.2d 203, 206–207 [2], [3].

On this appeal, plaintiff advances the following theories of why the facts stated would support, or at least not preclude, recovery:

"First, plaintiff outlined a case against defendant Butler in his opening statement which was submissible to the jury on the theory that defendant Butler was a supplier of a chattel (i. e., a feed grinder) and had failed to instruct or warn the plaintiff with respect to the installation and operation of the chattel, and also on the theory that defendant Butler was responsible legally for the manufacture and design of the same, under the facts and circumstances outlined here, and also that defendant Butler had knowledge or should have had knowledge of the dangerous condition created by the machine in connection with the ground grain which it produced; and second, and in the alternative, that even if the opening statement of plaintiff's counsel was insufficient with respect to certain facts constituting a submissible cause of action, that even this standing alone, is not sufficient justification to enter the aforesaid verdict and judgment in favor of defendant Butler and against plaintiff."

■ We must acknowledge that we find some difficulty in ascertaining the theory upon which plaintiff's claim is based. In part, he seems to rely upon the theory of liability of a supplier of a chattel known to be dangerous for intended use. Basically, his contention appears to be that Butler, by reason of its dealing in and experience with the grinder either knew or should have known that its operation involved the production of dust and "a wet and moist product" which would make the floor of the area in the vicinity of the grinder slick and dangerous. Therefore, Butler had a duty to warn of the matters giving rise to the danger. In asserting his claim on this basis, plaintiff has ignored the element of liability that the supplier must have no reason to believe that users of the grinder would recognize the danger which, according to this theory, its operation involved. "It is not necessary for the supplier to inform those for whose use the chattel is supplied of a condition which a mere casual looking over will disclose, unless the circumstances under which the chattel is supplied are such as to make it likely that even so casual an inspection will not be made." 2 Rest. of Torts (2d), § 388, Comment on

Clause (b), pp. 306–307. Here, in his opening statement, plaintiff's counsel acknowledged that plaintiff was aware of the condition which gave rise to the danger. He stated: "When feed is ground there is a great deal of dust and loose grain and things of that nature that comes out and rolls around and settles on the floor. *Mr. Swindler was afraid to move the ladder because if he did move it he was bound to get some of the grain and dust underneath it;* he had to leave the ladder right where it was." (Emphasis supplied)

The admitted knowledge of the obvious condition precludes liability on the theory of failure to warn. Cases cited by plaintiff, such as Bean v. Ross Manufacturing Company, Mo., 344 S.W.2d 18, 25 [3]; Martin v. Maxwell-Brisco Motor Vehicle Co., 158 Mo.App. 188, 138 S.W. 65, and Blitzstein v. Ford Motor Company, 5 Cir., 288 F.2d 738, 742–743 [8, 9], offer no support for plaintiff's position here. Bean v. Ross involved the adequacy of the warning of the danger involved in the use of an admittedly dangerous product. Martin v. Maxwell-Brisco involved the duty of an automobile salesman, familiar with the danger from a "kicking" crank, to warn one unfamiliar with such matters and unaware of the danger.

Plaintiff also suggests that his counsel's admission that the grinder was not manufactured by Butler would not necessarily preclude Butler's liability as if it were the manufacturer, because the statement did not negative the possibility that Butler had sold the grinder as its own product. See 2 Rest. of Torts (2d), § 400, pp. 337–338. On this basis, plaintiff would then impose upon Butler the liability imposed upon a manufacturer of a chattel made under a dangerous design or plan. That liability is stated in § 398 of the Restatement of Torts (2d), p. 336, as follows: "A manufacturer of a chattel made under a plan or design which makes it dangerous for the uses for which it is manufactured is subject to liability to others whom he should expect to use the chattel or to be endangered by its probable

use for physical harm caused by his failure to exercise reasonable care in the adoption of a safe plan or design."

■ Assuming that proof of liability as for a manufacturer might not be precluded, plaintiff's petition charged that the negligent design lay in failure to provide a safe place to stand for persons working in the vicinity of the grinder. However, plaintiff's statement showed that the injuries were not sustained in a fall by him while standing near the grinder. It clearly showed that the fall occurred while plaintiff was on a ladder placed on the floor in the vicinity of the grinder. There was no allegation that would have placed any duty upon the manufacturer to provide a safe place for ladders in the vicinity of the machine and the charge related to a failure to provide a safe place to stand cannot be taken to allege a duty with respect to persons on ladders.

■ In his opening statement, plaintiff's counsel apparently sought to extend his charge of negligent design to encompass a failure of the design to provide openings in the receptacle through which grain entered the grinder in order to allow the operator to ascertain that the desired ingredients are entering the grinder for processing. He would relate such defective design to the material on the floor by his statement that, because of the absence of such openings, Mr. Gross was obliged to make square openings in the receptacle into which he inserted round pipes, with the result that grain spilled out onto the floor *through the openings left by the round pipes in square holes.* Even if it be conceded that somehow proof to such effect might have been admissible under plaintiff's petition, his statement makes clear that the inadequacy of the Grosses' alteration of the design was the cause of the escape of grain through the openings which Mr. Gross made and could not afford any basis for liability on Butler's part on the ground of failure to adopt a safe design for the grinder.

Alternatively, appellant argues that, in any event, the record does not show that the whole of plaintiff's case was fully and completely set forth in the opening statement, and, therefore, the motion for directed verdict should not have been sustained even if the statement made did not reveal facts which would show a right of recovery by plaintiff. In Hays v. Missouri Pacific R. Co., supra, the court did state that a directed verdict at the close of an opening statement should be granted "only when it affirmatively appears that plaintiff's case has been fully stated and after counsel has been afforded an opportunity, after the motion for directed verdict has been made, to correct or add to his opening statement." 304 S.W.2d 804–805 [2–5]. Here, plaintiff's counsel's opening statement was certainly more than "an outline of the anticipated proof * * *." Approximately eleven pages of the transcript here are filled with the portion of the opening statement relating to the circumstances and cause of plaintiff's injury. When Butler's attorney moved for a directed verdict, stating the deficiencies in the statement upon which the motion was based, plaintiff's counsel made no effort to supply such deficiencies. In such circumstances, we cannot conclude that plaintiff's opening statement did not in fact state the whole of plaintiff's case. The trial court was not, in this case, under a duty to suggest to plaintiff that his statement might be amplified. See Jones v. Hicks, 358 Mich. 474, 100 N.W.2d 243. Even on this appeal, appellant has advanced no showing of what proof he might have offered in addition to that contained in his opening statement. He does state that he had "intended to call an expert of his own choosing, one or possibly both of the Grosses, and perhaps some of defendant Butler's own personnel as witnesses with respect to the manner in which the unit was sold, the design features, and the knowledge that one of them may or may not possess with reference to the operation and installation of the unit." The vagueness of this statement reinforces our opinion

that the trial court, in this case, justifiably concluded that plaintiff had stated the essential basis of his cause of action and that he simply had no valid claim against Butler.

Judgment affirmed.

HOUSER and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.