Margarita Sue ALVARADO, Plaintiff,

v.

J.C. PENNEY COMPANY, INC., Defendant.

No. 83–4375.

United States District Court, D. Kansas.

May 16, 1989.

Bernard J. Robertson, Exeter, N.H., Lynn Hursh, and Turner and Boisseau, Chtd., Overland Park, Kan., for plaintiff.

Kip A. Kubin, Frank Saunders, Jr., Wallace, Saunders, Austin, Brown & Enochs, Chtd., Overland Park, Kan., for defendant.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This is a products liability action. Plaintiff contends that she was severely burned on December 19, 1981 when a nightgown and robe she had purchased from defen-

dant J.C. Penney Co., Inc. were ignited by an open-flame gas heater. Plaintiff alleges that the nightgown and robe were defective and unreasonably dangerous when they were sold by the defendant. Plaintiff has identified three defects in the nightgown and robe: (1) ease of ignition; (2) rapid rate of burning; and (3) difficulty of removal of the garments. This matter is presently before the court upon defendant's motion for summary judgment.

In considering the defendant's motion for summary judgment, the court must examine all the evidence in the light most favorable to the plaintiff. *Barber v. General Elec. Co.*, 648 F.2d 1272, 1276 n. 1 (10th Cir.1981). According to the federal rules, summary judgment is proper only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). Under this rule, the initial burden is on the moving party to show the court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The moving party's burden may be met when that party identifies those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2553.

Once the moving party has met these requirements, the burden shifts to the party resisting the motion. The non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The party resisting the motion "may not rest upon the mere allegations or denials of his pleadings ..." to avoid summary judgment. *Anderson v. Liberty Lobby, Inc., supra,* at 248, 106 S.Ct. at 2510. The mere existence of a scintilla of evidence will not avoid summary judgment; there must be sufficient evidence on which a jury could reasonably find for the nonmoving party. *Id.* at 251, 106 S.Ct. at 2511 (quoting *Improvement Company v. Mun-*

*son,* 81 U.S. (14 Wall.) 442, 448, 20 L.Ed. 867 (1872)).

Penney seeks summary judgment based on the "retailer exception" of the Kansas Products Liability Act, K.S.A. 60–3301 *et seq.* The "retailer exception," K.S.A. 60–3306, provides as follows:

A product seller shall not be subject to liability in a product liability claim arising from an alleged defect in a product, if the product seller establishes that: (a) Such seller had no knowledge of the defect;

(b) such seller in the performance of any duties the seller performed, or was required to perform, could not have discovered the defect while exercising reasonable care;

(c) the seller was not a manufacturer of the defective product or product component;

(d) the manufacturer of the defective product or product component is subject to service of process either under the laws of the state of Kansas or the domicile of the person making the product liability claim; and

(e) any judgment against the manufacturer obtained by the person making the product liability claim would be reasonably certain of being satisfied.

The last two requirements of K.S.A. 60–3306 are not in dispute under the facts presently before the court. The focus of the arguments made by the parties is on the first three requirements of the exception.

The court shall first consider the arguments directed at K.S.A. 60–3306(a). The arguments made by Penney on this subsection differ depending upon which defect is being considered—the "flammability defects" (ease of ignition and rapid rate of burning) or the "removal defect" (difficulty in removing the garments). Penney's position concerning the flammability defects is that it had no knowledge of any such defects in the clothing because there were, in fact, no such defects in either the nightgown or robe. Penney asserts that, pursuant to K.S.A. 60–3304(a), the clothing was

not defective because it was in compliance with the only federal standard for flammability of adult sleepwear: CS 191–53. Penney's position concerning the removal defect is that K.S.A. 60–3306(a) should not apply because it is inapplicable to "obvious" defects.

In assessing Penney's argument concerning the flammability defects, we must first examine K.S.A. 60–3304(a):

> When the injury-causing aspect of the product was, at the time of manufacture, in compliance with legislative regulatory standards or administrative regulatory safety standards relating to design or performance, the product shall be deemed not defective by reason of design or performance, or, if the standard addressed warnings or instructions, the product shall be deemed not defective by reason of warnings or instructions, unless the claimant proves by a preponderance of the evidence that a reasonably prudent product seller could and would have taken additional precautions.

The parties have differed in their interpretation of K.S.A. 60–3304(a). Penney argues that the statute creates a conclusive presumption regarding design and performance defects such as the flammability defects asserted by plaintiff. Plaintiff contends that only a rebuttable presumption is created because the last clause of the statute modifies both defects involving design/performance *and* defects involving warnings/instructions.

■ For a number of reasons, we believe that the defendant's interpretation of K.S.A. 60–3304(a) is correct. A plain reading of the statute indicates that the final clause modifies only the preceding clause relating to warnings/instructions and does not modify the clause relating to design/performance. This interpretation is supported by the rule of the last antecedent, which has been recognized repeatedly by the Kansas courts. In *Ruthrauff v. Kensinger*, 214 Kan. 185, 519 P.2d 661, 666 (1974) (quoting *Barten v. Turkey Creek Watershed Joint District No. 32*, 200 Kan. 489, 438 P.2d 732 (1968)),

the Kansas Supreme Court articulated the rule as follows:

> "... In construing statutes, qualifying words, phrases and clauses are ordinarily confined to the last antecedent, or to the words and phrases immediately preceding. The last antecedent, within the meaning of this rule, has been regarded as the last word [or clause] which can be made an antecedent without impairing the meaning of the sentence."

*Also see Hachiva v. Board of Education, School Dist. No. 307*, 242 Kan. 572, 750 P.2d 383, 388–89 (1988).

Additional support for the defendant's argument is contained in K.S.A. 60–3304(b). This subsection reads as follows:

> When the injury-causing aspect of the product was not, at the time of manufacture, in compliance with legislative regulatory standards or administrative regulatory safety standards relating to design, performance, warnings or instructions, the product shall be deemed defective unless the product seller proves by a preponderance of the evidence that its failure to comply was a reasonably prudent course of conduct under the circumstances.

In K.S.A. 60–3304(b), the regulations regarding performance, design, warnings and instructions are treated the same. The Kansas legislature could have lumped the terms together in K.S.A. 60–3304(a) had they intended plaintiff's interpretation of the statute. However, since the distinction is made between design/performance regulations and warnings/instructions regulations in subsection (a), and no such distinction is made in subsection (b) of the same statute, then it is clear that the legislature must have intended a distinction in subsection (a).

The court notes that at least one commentator has failed to recognize this distinction. In Westerbeke, *Some Observations on the Kansas Product Liability Act (Part 2)*, 54 J.K.B.A. 39 (1985), Professor William Westerbeke had this to say about K.S.A. 60–3304(a):

> [C]ompliance with a safety standard creates a presumption of nondefectiveness

that the claimant can rebut by evidence that a reasonable seller could and would have taken additional precautions. This is a relatively weak test because any evidence of a feasible alternative safer design, warning or instruction should create a jury question on the rebuttal issue. I suspect this provision will afford the seller with a basis for a finding of nondefectiveness as a matter of law. Indeed, this provision is perhaps weaker than the prior Kansas test that compliance with safety standards "may be conclusive in the absence of special circumstances." [*Jones v. Hittle Service, Inc.*, 219 Kan. 627, 549 P.2d 1383, 1390 (1976)].

*Id.* at 39. *Also see Chamberlain v. Schmutz Manufacturing Co., Inc.*, 532 F.Supp. 588, 590 (D.Kan.1982).

Although we ordinarily regard Professor Westerbeke's opinion with some reverence because of his expertise in the area of Kansas product liability law, we are of the view that he has simply overlooked the standard established by the Kansas legislature for design/performance cases.

■ The court's interpretation of K.S.A. 60–3304(a) leads us to the additional conclusion that the portion of the subsection relating to design/performance constitutes a conclusive presumption. A conclusive presumption is a rule of substantive law which applies regardless of facts and cannot be contradicted by evidence to the contrary. *State v. Warbritton*, 211 Kan. 506, 506 P.2d 1152 (1973). Thus, when a defendant demonstrates that a product at the time of manufacture was in compliance with legislative regulatory standards or administrative regulatory standards relating to design or performance, then the product is conclusively presumed not defective by reason of design or performance. The plaintiff is not allowed to present evidence to rebut this finding.

With this question behind us, we must next consider whether the evidence in the record shows that the nightgown and robe were in compliance with CS 191–53. Penney suggests that the testimony of plaintiff's expert witness shows that the clothing complied with the standard. Plaintiff denies that her expert witness testified that the clothing was in compliance with CS 191–53. Plaintiff asserts that the expert testified that he had never conducted any tests on the fabrics in question to determine if they complied with CS 191–53.

■ The court has carefully reviewed the testimony of plaintiff's expert witness on this issue. We do not find that this testimony requires the entry of summary judgment for the defendant. In his deposition testimony, plaintiff's expert witness clearly indicates that he has not conducted any tests on the fabrics of the garments in question to determine if they comply with CS 191–53. His testimony that the fabrics would probably meet this standard would not be admissible at trial, so it cannot be considered on a motion for summary judgment. *See* Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2722, p. 48–50 (1983). No other evidence in the record supports Penney's argument that the clothing complied with CS 191–53. Accordingly, we are unable to grant summary judgment to Penney on this point.

Penney further argues that K.S.A. 60–3306(a) should not apply to plaintiff's alleged removal defect because it is inapplicable to "obvious" defects. Penney asserts that the "no knowledge" standard of K.S.A. 60–3306(a) applies only in cases where the alleged defect is a latent one. Plaintiff counters that the defendant's argument should not be adopted because K.S.A. 60–3306(a) makes no distinction between obvious and latent defects. Plaintiff also argues that summary judgment cannot be granted on this issue in any event because a genuine issue of fact exists as to whether the alleged defect is an obvious one.

■ The court finds that a question of fact does exist as to whether the alleged removal defect is an obvious one. Thus, we find it unnecessary to consider Penney's argument concerning the scope of K.S.A. 60–3306(a). We do note, however, some distinction between this case and the one relied upon by defendant in its briefs, *Mays v. Ciba–Geigy Corp.*, 233 Kan. 38, 661 P.2d

348 (1983). Here, we are dealing with a design defect rather than a failure to warn or instruct about a defect that is open and obvious. *See, e.g., Lamon v. McDonnell Douglas Corp.*, 19 Wash.App. 515, 576 P.2d 426 (1976), *aff'd*, 91 Wash.2d 345, 588 P.2d 1346 (1979) (*en banc*) (duty to *warn* obviated by knowledge of the danger but not duty to provide safe *design*).

■ The court shall next turn our attention to the defendant's arguments concerning K.S.A. 60–3306(b). Penney argues first that it had no duty to conduct any flammability tests on the fabrics in question. Penney next contends that the evidence fails to show that any testing performed by it were inadequate.

The record is clear that the defendant does have a testing laboratory and does make periodic tests of new fabrics to determine flammability. We believe that this evidence, coupled with the fact that the record fails to demonstrate that the fabrics in question comply with CS 191–53, indicate that summary judgment cannot be granted to the defendant based on K.S.A. 60–3306(b). Plaintiff has offered expert testimony that the fabrics in question were defective, and the defendant has failed to counter that testimony with evidence that the fabrics complied with CS 191–53. Thus, the issue of whether the defendant could have discovered the defect while exercising reasonable care must await trial.

Finally, the court shall consider the arguments directed at the issue established by K.S.A. 60–3306(c). Penney asserts that the record establishes that it was not a "manufacturer" of a defective product.

"Manufacturer" is defined in the Kansas Product Liability Act as follows:

"Manufacturer" includes a product seller who designs, produces, makes, fabricates, constructs or remanufactures the relevant product or component part of a product before its sale to a user or consumer. It includes a product seller or entity not otherwise a manufacturer that holds itself out as a manufacturer, or that is owned in whole or in part by the manufacturer.

K.S.A. 60–3302(b).

The issue presented here is whether Penney is a "product seller or entity not otherwise a manufacturer that holds itself out as a manufacturer." This issue arises from certain evidence indicating that, although the robe and nightgown were manufactured by companies other than Penney, the garments contained labels stating "J.C. Penney Co."

■ The court has carefully examined the record and we believe that a factual dispute exists as to whether the robe and nightgown contained Penney labels. This dispute precludes the entry of summary judgment on this issue. If the garments contained such labels, then Penney could be considered a manufacturer under K.S.A. 60–3302(b). Support for this view can be found in Westerbeke, *Some Observations on the Kansas Product Liability Act (Part 2), supra*, at 48, where Professor Westerbeke states:

[T]he "holding out" exclusion ... applies to the retailer who sells a private label product that is manufactured by another, but bears the retailer's own name.... For example, consider the hypothetical case of the retail grocery chain that sells under its private label a food product canned by another, and one can contains a harmful foreign object that injures a consumer. Even though all other requirements for nonliability are met, the retailer cannot use [K.S.A. 60–3306] to avoid liability. Yet eventually the retailer will recover full indemnity from the actual manufacturer, and the final allocation of loss is the same as if [K.S.A. 60–3306] had been applied. (Footnotes omitted.)

Penney has also suggested that the record fails to provide sufficient support for the plaintiff's prayer for punitive damages. Again, we are unwilling to grant summary judgment on this issue. We believe that this matter should be considered after we hear all of the evidence in this case.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment be hereby denied.

IT IS SO ORDERED.