**Claire LONG and Allstate Insurance Company, an Illinois corporation, Plaintiffs,**

v.

**UNITED STATES BRASS CORPORATION, a Texas corporation, and Dormont Manufacturing Company, a Pennsylvania corporation, Defendants.**

No. CIV. 03–B–968 (BNB), 04–B–613 (BNB).

United States District Court, D. Colorado.

Aug. 17, 2004.

Stephen H. Cook, Derek Regensburger, The Law Firm of Stephen H. Cook, PC,

Boulder, CO, Richard Roy Rardin, Cozen O'Connor, Denver, CO, for Plaintiffs.

Kenneth H. Lyman, Bruce Alford Menk, Hall & Evans, Denver, CO, for Defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, Chief Judge.

The Plaintiff in this product liability action, Claire Long ("Long"), moves for summary judgment on the issue who should bear responsibility if she is able to prove that her injuries resulted from a defect in a propane gas pipe. She argues that the Defendant, United States Brass Corporation ("US Brass"), is the apparent manufacturer because U.S. Brass packaged and sold the product as its own and did not disclose at the time of sale that the part was actually manufactured by the Defendant, Dormont Manufacturing Company ("Dormont").

On Friday, August 6, 2004 I heard oral arguments, which supplemented the parties' briefs. For the reasons set forth below, I GRANT the Plaintiff's Motion.

### I. Facts

The following facts are undisputed for the purposes of this motion.

On February 23, 2001, Shakira Ballin ("Ballin"), a homeowner in Nederland, Colorado, had a propane heater moved from her living room to a "work room" in her house. The contractor who performed the installation connected the heater to its propane source with a flexible metal connector pipe ("Pipe"), which he had purchased at a hardware store. The Pipe is comprised of a flexible, corrugated metal tube with brass nuts at each end and additional brass fittings. The nuts are stamped with U.S. Brass' name and address—Commerce, Texas. US Brass, which had packaged and sold the Pipe and supplied the brass fittings, subcontracted the manufac-

turing of the corrugated tube and nuts to Dormont. Neither Dormont's name nor its logo appear on any component of the Pipe. On June 15, 2000, U.S. Brass had written to its testing laboratory, CSA International ("CSA"), to inform CSA of its arrangement with Dormont. CSA maintains records concerning the design and manufacture of U.S. Brass products, but does not share that information with third parties.

Some days after the installation at the Ballin residence, Ms. Ballin retained Ms. Long to tend to the house while she went on vacation. On March 3, 2001, Ms. Long turned on a vacuum cleaner in the work room. The machine ignited propane, which had collected in the room. The explosion and ensuing fire caused Ms. Long second- and third-degree burns on her face and body. The Boulder County Sheriff's Department concluded from its investigation that the source of the ignited propane was a leak in the corrugated tube portion of the Pipe. The Plaintiff, Allstate Insurance Company ("Allstate"), which insured Ms. Ballin, arrived at the same conclusion after its own investigation.

### II. Discussion

Rule 56(c) provides that summary judgment shall be granted if no genuine issue of material fact is presented and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, that it believes demonstrate the absence of genuine issues for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Mares v. ConAgra Poultry Co.*, 971 F.2d 492, 494 (10th Cir. 1992). Once a properly supported sum-

mary judgment motion is made, the opposing party must respond with specific facts showing the existence of a genuine factual issue to be tried. Rule 56(e); *see also Otteson v. United States*, 622 F.2d 516, 519 (10th Cir.1980). These facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

The parties agree that Colorado law applies. Colorado Revised Statutes Sections 13–21–401 *et seq.* govern product liability actions and impose strict liability upon manufacturers of defective products if enumerated criteria are met, subject to various rebuttable presumptions. The Plaintiffs intend to prove that Ms. Long's injuries resulted from a manufacturing defect in the Pipe and, specifically, the corrugated tube. Ms. Long's motion presents the question whether U.S. Brass is a manufacturer of the product and liable for any defect to be proven at trial.

The parties dispute whether U.S. Brass in fact manufactured the product. Ms. Long claims that U.S. Brass assembled the Pipe before packaging it for sale. Also, I find indications in materials provided by U.S. Brass that it was involved in the manufacturing process. For example, in his Affidavit, Frederick J. Clark ("Clark"), Manager, Special Investigations of CSA, indicates that Dormont manufactured a "component" of U.S. Brass' "flexible gas connector" product, implying that U.S. Brass manufactured the rest. Aff. Frederick J. Clark, ¶¶ 6, 8. Richard Sekerchak ("Sekerchak"), Dormont's designated deponent, testified that U.S. Brass dictated the type and grade of material to be used in manufacturing the Pipe. Dep. Richard Sekerchak, 205–206.

Much of the record before me indicates, however, that U.S. Brass' involvement in the design and production of the Pipe was limited to provision of the brass fittings,

which are intended to wed the Pipe to other components of the appliance that it serves. Mr. Sekerchak testified that Dormont controlled the production and assembly of the metal tube and the brass nuts and U.S. Brass produced only the brass fittings. Dep. Richard Sekerchak, 208–210. Dormont would not have shared with U.S. Brass information about its production because U.S. Brass is a competitor. Dep. Richard Sekerchak, 209.

Nothing in the record indicates whether the fittings that U.S. Brass provided were incorporated into or used with the Pipe installed at the Ballin residence. A factual dispute thus exists concerning whether U.S. Brass had any role in the process of manufacturing the end product. Because of this dispute, I do not find that U.S. Brass was the actual manufacturer.

## A. The apparent manufacturer doctrine is the law of Colorado.

That U.S. Brass packaged and sold the Pipe with its own name, and no other, displayed on the product is undisputed. US Brass doubts whether that act is sufficient to bring it within the definition of "manufacturer," as that term appears in the statute. US Brass considers itself a "seller," which is an "individual or entity, including a manufacturer, wholesaler, or retailer, who is engaged in the business of selling or leasing any product for resale, use, or consumption." Colo.Rev.Stat. § 13–21–401(3). US Brass claims absolution because "[n]o product liability action shall be commenced or maintained against any seller of a product unless said seller is also the manufacturer of said product or the manufacturer of the part thereof giving rise to the product liability action." Colo.Rev.Stat. § 13–21–402(1). The exception admitted in this innocent-seller rule does not concern U.S. Brass because, it argues, actual manufacturing is the only

conduct by which a seller can be deemed to be a manufacturer. The statute does not explicitly state otherwise.

If appearing alone in the statute, these provisions would almost certainly end the inquiry. However, U.S. Brass fails to offer a satisfactory explanation for Subsection 1 of Section 13–21–401, which provides, *inter alia,*

> A seller not otherwise a manufacturer shall not be deemed to be a manufacturer merely because he places or has placed a private label on a product if he did not otherwise specify how the product shall be produced or control, in some manner, the manufacturing process of the product and the seller discloses who the actual manufacturer is.

Colo.Rev.Stat. § 13–21–401(1). This provision would make no sense unless placement of a private label was otherwise sufficient to impose liability. As the Tenth Circuit Court of Appeals stated in *Yoder v. Honeywell, Inc.,* 104 F.3d 1215, 1223 (10th Cir.1997), *cert. denied,* 522 U.S. 812, 118 S.Ct. 55, 139 L.Ed.2d 19 (1997), "By negative implication the statute allows a seller who places a private label on a product without disclosing the actual manufacturer to be held liable as a manufacturer."

Other than the dicta in *Yoder,* I have not found, and the parties have not presented, Colorado law on the issue Ms. Long hypothesizes that the Colorado Supreme Court, if confronted with the same facts and issue, *see Aurora v. Bechtel Corp.,* 599 F.2d 382, 386 (10th Cir.1979), would adopt the view of the Restatement, which says, "One who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer." Restatement (Second) of Torts § 400 (1965). This so-called "apparent manufacturer" doctrine certainly is not inconsistent with the language of the Colorado statute and matches the implication that the Tenth Circuit found in Subsection 401(1).

The Restatement explains the rationale for the rule.

> The actor puts out a chattel as his own product in two types of cases. The first is where the actor appears to be the manufacturer of the chattel. The second is where the chattel appears to have been made particularly for the actor. In the first type of case the actor frequently causes the chattel to be used in reliance upon his care in making it; in the second, he frequently causes the chattel to be used in reliance upon a belief that he has required it to be made properly for him and that the actor's reputation is an assurance to the user of the quality of the product.

Restatement (Second) of Torts § 400 cmt. d (1965). In either case, the actor expects its own name to carry some weight with the customer and hopes to capitalize upon, and preserve, its goodwill. This representation, which the seller makes for its own benefit, leaves the customer *ignorant of* who actually manufactured the product. As the Supreme Court of Illinois explained,

> The primary rationale for imposing liability on the apparent manufacturer of a defective product is that it has induced the *purchasing public* to believe that it is the actual manufacturer, and to act on this belief—that is, to *purchase the product in reliance* on the apparent manufacturer's reputation and skill in making it.

*Hebel v. Sherman Equipment,* 92 Ill.2d 368, 65 Ill.Dec. 888, 442 N.E.2d 199, 203 (1982) (emphasis original).

This case illustrates the Restatement's reasoning. James Thomas Brown ("Brown"), a deponent-representative of U.S. Brass, testified that U.S. Brass required Dormont to stamp U.S. Brass'

name on the Pipes in order that U.S. Brass could represent to its customers that it manufactured the Pipes. Dep. James Thomas Brown, 35–36. US Brass "wanted to maintain and protect its customer base." Dep. James Thomas Brown, 112. The end game was to keep those customers who had come to rely upon U.S. Brass' past performance as a manufacturer. This is the situation that the apparent manufacturer rule addresses.

Nearly every jurisdiction confronted with the issue has adopted the apparent manufacturer doctrine. These include Alabama, *Sears, Roebuck & Co. v. Morris*, 273 Ala. 218, 136 So.2d 883, 885 (1961); California, *Cravens, Dargan & Co. v. Pacific Indem. Co.*, 29 Cal.App.3d 594, 105 Cal.Rptr. 607, 611 (1972); Florida, *King v. Douglas Aircraft Co.*, 159 So.2d 108, 110 (Fla.Dist.Ct.App.1963); Georgia, *Moody v. Sears, Roebuck & Co.*, 324 F.Supp. 844, 846 (S.D.Ga.1971), *superseded by statute as stated in Freeman v. United Cities Propane Gas, Inc.*, 807 F.Supp. 1533, 1539–1540 (M.D.Ga.1992); Indiana, *Dudley Sports Co. v. Schmitt*, 151 Ind.App. 217, 279 N.E.2d 266, 273 (1972); Iowa, *Tice v. Wilmington Chemical Corp.*, 259 Iowa 27, 141 N.W.2d 616, 628 (Iowa 1966); Kansas, *Davis v. United States Gauge*, 844 F.Supp. 1443, 1446 (D.Kan.1994); Louisiana, *Penn v. Inferno Mfg. Corp.*, 199 So.2d 210, 215 (La.App.1967), *cert. denied*, 251 La. 27, 202 So.2d 649 (1967); Mississippi, *Coca Cola Bottling Co. v. Reeves*, 486 So.2d 374, 378 (Miss.1986), *superseded by statute as stated in Turnage v. Ford Motor Co. (In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.)*, 260 F.Supp.2d 722, 727 (S.D.Ind.2003); New Jersey, *Slavin v. Francis H. Leggett & Co.*, 114 N.J.L. 421, 177 A. 120, 121 (N.J.Super.Ct.1935), *aff'd*, 117 N.J.L. 101, 186 A. 832 (N.J.1936); New York, *Andujar v. Sears Roebuck & Co.*, 193 A.D.2d 415, 597 N.Y.S.2d 78, 78 (N.Y.App.Div.1993) (citing *Commissioners of State Ins. Fund v. City Chemical Corp.*,

290 N.Y. 64, 48 N.E.2d 262, 265 (1943)); North Carolina, *Warzynski v. Empire Comfort Systems, Inc.*, 102 N.C.App. 222, 401 S.E.2d 801, 803–804 (1991); Pennsylvania, *Forry v. Gulf Oil Corp.*, 428 Pa. 334, 237 A.2d 593, 599 (1968); Texas, *Sears, Roebuck & Co. v. Black*, 708 S.W.2d 925, 928 (Tex.App.1986); Virginia, *Carney v. Sears, Roebuck & Co.*, 309 F.2d 300, 304 (4th Cir.1962) (citing *Highland Pharmacy, Inc. v. White*, 144 Va. 106, 131 S.E. 198 (1926)); and Wisconsin, *Wojciuk v. United States Rubber Co.*, 13 Wis.2d 173, 108 N.W.2d 149, 152–153 (1961).

Other courts have affirmed the validity of the rule while not finding it to have application to the cases before them. *See, e.g., Dildine v. Clark Equipment Co.*, 282 Ark. 130, 666 S.W.2d 692, 695 (1984), (citing *Chapman Chemical Co. v. Taylor*, 215 Ark. 630, 222 S.W.2d 820, 827 (1949)); *Burkert v. Petrol Plus of Naugatuck, Inc.*, 216 Conn. 65, 579 A.2d 26, 33 (1990); *Hebel*, 65 Ill.Dec. 888, 442 N.E.2d at 203 (Illinois); *Swindler v. Butler Mfg. Co.*, 426 S.W.2d 78, 83 (Mo.1968); and *Zamora v. Mobil Oil Corp.*, 104 Wash.2d 199, 704 P.2d 584, 588 (1985). *See also McLaughlin v. Michelin Tire Corp.*, 778 P.2d 59, 69 n. 1 (Wyo.1989) (Urbigkit, J., specially concurring and dissenting).

■ Reference to the legislative actions of other states confirms that the Colorado legislature has endorsed the Restatement view. Had the legislature intended to exclude apparent manufacturers from liability, it could have done so explicitly, as other states have considered or done. *See Alltrade, Inc. v. McDonald*, 213 Ga.App. 758, 445 S.E.2d 856, 858 (1994) (Georgia legislature adopted provision limiting liability to actual manufacturers). *Contrast Davis*, 844 F.Supp. at 1446 (Kansas legislature considered and rejected provision limiting liability to actual manufacturers).

I have found only one case rejecting the apparent manufacturer doctrine—*Seasword v. Hilti, Inc.*, 449 Mich. 542, 537 N.W.2d 221, 224 (1995). In *Seasword*, the Michigan Supreme Court declined the invitation to invoke the doctrine on the ground that the purpose of the doctrine—assuring that some entity in the product enterprise remains answerable for injuries caused by defective products—is adequately served by existing Michigan product liability law, which holds non-manufacturing sellers liable for defects on grounds other than holding products out as their own. *Seasword*, 537 N.W.2d at 224. Unlike many other states, Michigan has not adopted strict liability for product defects. *Seasword v. Hilti, Inc.*, 207 Mich.App. 609, 525 N.W.2d 501, 503 (1994), *vacated on other grounds*, *Seasword*, 537 N.W.2d at 225. Under Michigan law, both the manufacturer and the seller are liable for defects on theories of breach of warranty and failure to warn. *Id.* By contrast, Colorado has enacted a strict liability statute that exempts sellers from liability in enumerated circumstances. The justification that the *Seasword* court employed for going against the weight of authority has no effect here.

US Brass points out that the Colorado statute provides the exclusive remedy for claims within its scope. Citing *Schlessinger v. Schlessinger*, 796 P.2d 1385 (Colo. 1990) and *Jones v. People*, 155 Colo. 148, 393 P.2d 366 (1964), U.S. Brass argues that the existence of the statutory scheme precludes the adoption of common law rules not included within the statute. Put another way, the statute does not admit of the apparent manufacturer doctrine because it does not explicitly mention it. This reasoning is merely U.S. Brass' own reading of the statute in another guise.

I do not think that my ruling imposes too harsh a burden on sellers of products. A business that wishes to pass a product off as its own has at least two means of protection available to it. It may, at the point of advertising, distribution, or sale, identify to the consumer the manufacturers of the various components of the product and thus absolve itself of responsibility pursuant to Colo.Rev.Stat. § 13–21–401(1). Or the seller might insist upon indemnification from its supplier as part of the supply agreement, as U.S. Brass appears to have done here with Dormont; Mr. Brown testified, at page 37, that Dormont agreed to "take responsibility for" any problems with the product. In any event, indemnification or contribution from the supplier will, in most cases, be available as a safety net. *See, e.g., Davis*, 844 F.Supp. at 1445–1446.

For all of these reasons, I find that, if confronted with this issue, the Colorado Supreme Court would adopt the view of the Restatement.

## B. US Brass failed to disclose the actual manufacturer.

■ US Brass identifies two disclosures that, it argues, defeat application of the apparent manufacturer doctrine. It disclosed Dormont's role in the manufacturing process first, to its testing laboratory and, second, after the commencement of this lawsuit, to the plaintiffs. US Brass necessarily asks me to read the statute to mean that *any* disclosure will suffice. However, a secret disclosure to a trustworthy confidant, namely CSA, cannot be what the Colorado legislature had in mind. US Brass did not disclose Dormont's role to any person from whom the Plaintiffs could have obtained that information. The rationale for the apparent manufacturer rule is the customer's reliance upon the information provided by the seller at the time of the seller's "advertising, distribution and sale" of the product. *Dudley Sports Co.*, 279 N.E.2d at 274. US Brass' letters to CSA did not aid Ms. Ballin's

understanding before she purchased the product because neither U.S. Brass nor CSA made those letters available to customers or consumers. As a result, Ms. Long, injured allegedly as a result of a defect in the product, could not have gleaned from the product, Ms. Ballin's knowledge, or any other information available to her, that Dormont manufactured the tube.

For the same reason, the *post-facto* disclosure to the plaintiffs also cannot satisfy the statute. *See Penn,* 199 So.2d at 212.

The parties have quoted a Colorado state senator who thought that sellers might immunize themselves by labeling the product with the name of the actual manufacturer and another senator who thought that such action would be unnecessary. This history is not helpful and is, in any event, inadequately cited; I cannot discern from the briefs in what legislative session, if any, the discussion occurred, whether the excerpt is from a committee meeting or a floor debate, or the significance of the speakers as representatives of the legislature's intent. I do not think, however, that the language of the statute is so unclear as to make recourse to legislative history necessary. *See State v. Nieto,* 993 P.2d 493, 500–501 (Colo.2000). Read in context, the word "disclosure" yields only to the interpretation Ms. Long gives it.

Accordingly, IT IS ORDERED that

1) Ms. Long's Motion for Partial Summary Judgment on the Issue of Apparent Manufacturer is GRANTED; and

2) US Brass is deemed to be a manufacturer of the Pipe for the purposes of Colorado Revised Statutes Sections 13–21–401 *et seq.*.