COMMISSIONERS OF THE STATE INSURANCE FUND, Appellants, *v.* CITY CHEMICAL CORPORATION, Appellant and Respondent, and AKATOS, INC., Defendant, Respondent.

Argued January 19, 1943; decided March 4, 1943.

*Harry Schechter, William F. O'Rourke* and *William H. Stieglitz* for plaintiffs,

*Godfrey von Hofe* for Akatos, Inc., respondent.

*Lyman A. Spalding* and *Robert E. Curran* for City Chemical Corporation, appellant and respondent.

DESMOND, J. Plaintiffs-appellants, as insurers, paid the workmen's compensation claim of one Procopiadi and so became subrogated to Procopiadi's rights against any third person whose wrongdoing had caused Procopiadi's injuries. As such subrogee, appellants sued respondent City Chemical Corporation. The complaint sounds in negligence. It alleges that Chas. Pfizer & Co., Inc., employer of Procopiadi, bought from respondent City Chemical Corporation two bottles labeled "Pyruvic Acid C. P." (chemically pure) which the Pfizer Corporation, to respondent's knowledge, intended to use as a reactant, that the substance in the bottles was not pyruvic acid but some inherently dangerous explosive substance, that Procopiadi, as

Pfizer's employee, attempted to open one of the bottles, which thereupon exploded, injurying Procopiadi. The answer of respondent City Chemical Corporation admits that it delivered to Procopiadi's employer two bottles labeled " Pyruvic Acid C. P." but denies knowledge of the use to which the substance was to be put by Pfizer or its employees and denies that it (City Chemical Corporation) delivered in those bottles any inherently dangerous or explosive substance. City Chemical Corporation sets up also in its answer a cross-claim against a third corporation, Akatos, Inc., which is a respondent on this appeal. In this cross-claim City Chemical Corporation says that it procured from Akatos, Inc., the same two bottles which in turn went to City Chemical Corporation, in the same condition and with the same contents, and that if the bottles did not contain pyruvic acid, and if they were mislabeled and contained any harmful thing, then the fault, says City Chemical Corporation, was the fault of Akatos, Inc. This cross-claim seems to go on two theories, that is, breach of warranty by Akatos, and negligence of the latter. Akatos, in its turn, pleads that it is a vendor and distributor, not a manufacturer, of chemicals, and that the pyruvic acid which it sold to City Chemical Corporation, came to Akatos, in the same unopened bottles, from a manufacturer in Germany. At the close of the evidence offered by appellants and by respondent City Chemical Corporation (Akatos, Inc., put in no proof) the complaint and the cross-complaint were both dismissed. The dismissal was affirmed by the Appellate Division. We proceed to an examination of the facts to determine whether there is any evidence of City Chemical Corporation's negligence.

Procopiadi was a laboratory assistant employed by the Pfizer Company, manufacturing chemists. A chemist named Kane, Procopiadi's superior, directed that there be performed in the laboratory at the Pfizer plant, an experiment requiring the use of pyruvic acid. Pfizer's purchasing department ordered the pyruvic acid from City Chemical Corporation, a manufacturing chemist, and the latter delivered two small bottles to Pfizer's messenger at the City Chemical plant. There is in the record an affidavit by an officer of City Chemical Corporation, offered in evidence by plaintiff against City Chemical Corporation, without objection. In that affidavit it is averred that the affiant,

when the order for the pyruvic acid came to him, told Pfizer's purchasing agent by telephone that City Chemical Corporation " would get the same if he could send someone up here for it." It is argued here that that statement proves notice to Pfizer that City Chemical Corporation had not itself prepared the acid but was obtaining it elsewhere. We think at best it is some evidence of such notice; the same affidavit contains the information that City Chemical Corporation, before sending on the bottles to Pfizer, removed the Akatos labels from the bottles and pasted on each bottle a label containing the name of City Chemical Corporation and the designation " Pyruvic Acid C. P."

When the time came, later the same afternoon, to use the pyruvic acid in the Pfizer experiment, Procopiadi found difficulty in removing from the first bottle its glass stopper, which stopper was covered with a little piece of cloth tied around the neck of the bottle with string. The bottles were amber-colored so that the color of the liquid could not be seen through the glass (chemically pure pyruvic acid, according to the testimony, is colorless). Procopiadi, according to his testimony, tapped one of the bottles lightly with a spatula to loosen the stopper. The bottle exploded and blew into bits, some of the particles of glass injuring Procopiadi's eye. The substance in the bottle, according to plaintiff's proof, was of an odor, color and consistency entirely unlike pure pyruvic acid. Pfizer's employees had used pyruvic acid before, were familiar with its physical properties and had never heard of it exploding under ordinary conditions. They were of the opinion that it would not decompose or generate explosive gases, except under heat and light conditions not obtaining at the time of this explosion. We consider that this showing was enough to raise a question of fact as to whether the substance in the bottles was or was not chemically pure pyruvic acid. (The contents of the other, and unopened, bottle were not available for testing since chemist Kane, out of caution, threw that other bottle away.)

The trial justice was of the opinion that, since City Chemical Corporation was a vendor and not a manufacturer, no recovery could be had against it except on proof against it of some negligent act or omission. Any finding of such negligence, he

thought, would be the product of mere speculation. We agree that this record would not justify a jury finding of such negligence on the part of City Chemical Corporation, but we do not think that is the end of the case.

Ordinarily the *maker* of a dangerous drug who labels it as a harmless drug, is liable to the ultimate consumer injured thereby; ordinarily a mere *dealer* who vends such a dangerous and mislabeled drug in its original package is not liable without proof of some real negligence on his part. (*Thomas* v. *Winchester*, 6 N. Y. 396, discussed in *MacPherson* v. *Buick Motor Co.*, 217 N. Y. 382 at page 385, also see *DuPont, De Nemours & Co.*, v. *Baridon*, 73 F. 2d 26, 29.) But such a vendor may hold himself out to his customer as being the manufacturer and if he does, he takes on a liability like unto that of the manufacturer. (*Willson* v. *Faxon, Williams & Faxon*, 208 N. Y. 108, 113, 114; *Auld* v. *Sears, Roebuck & Co.*, 261 App. Div. 918, affd. 288 N. Y. 515.) "One who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer." (Restatement of The Law of Torts, vol. 2, § 400.) "I think," wrote Judge WILLARD BARTLETT in *Willson* v. *Faxon, Williams & Faxon*, at page 113 of 208 N. Y. "that when the defendant represented to the plaintiff by means of the statement contained in the label on the box that Faxon, Williams & Faxon were the manufacturers of the preparation it rendered itself just as liable to the purchaser as the actual manufacturers would have been if the purchase had been made from them." In the present case there was at the trial a *prima facie* showing that the substance in the bottles was not the bland pyruvic acid ordered by Pfizer, but some dangerous explosive, and that the words on the bottle labels amounted to a representation that City Chemical Corporation was the maker of the substance in the bottle and that the substance was chemically pure pyruvic acid. We do not here have to go so far as do cases like *Tiedje* v. *Haney* (184 Minn. 569), which imposes a manufacturer's liability on a dealer who represents that the substance is "prepared for him." Here, as in the *Willson* case (*supra*) the inscription on the label could be taken to mean that City Chemical Corporation had itself prepared the liquid in the bottles. The case should have gone to the jury.

Since there must be a new trial, we mention that we see no error in the Trial Justice's ruling permitting the impleaded defendant to cross-examine plaintiff's witnesses.

The judgments should be reversed and a new trial granted as to both defendants, with costs to the plaintiffs-appellants against the defendant-respondent City Chemical Corporation, to abide the event.

LEHMAN, Ch. J., LOUGHRAN, FINCH, RIPPEY, LEWIS and CONWAY, JJ., concur.

Judgment accordingly.