Marianne E. FLETCHER, Nancy L. Bartley, Raphael Paganelli, and Charlotte Evans, Plaintiffs–Appellants,

v.

ATEX, INC., Defendant,

EASTMAN KODAK COMPANY, Defendant–Appellee.

and

Jenny L. HERMANSON and Christy Scattarella, Plaintiffs–Appellants,

v.

805 MIDDLESEX CORP., f/k/a Atex, Inc., and Apple Computers, Inc., Defendants,

Eastman Kodak Company, Defendant–Appellee.

Nos. 1426, 1427, Dockets 94–9080, 94–9120.

United States Court of Appeals, Second Circuit.

Argued May 26, 1995.

Decided Oct. 5, 1995.

Steven J. Phillips, Levy Phillips & Konigsberg, New York City (Alani Golanski, Levy Phillips & Konigsberg, New York City, on the brief), for Plaintiffs–Appellants.

Thomas E. Reidy, Nixon, Hargrave, Devans & Doyle, Rochester, New York (Henry J. DePippo, Flor M. Ferrer–Colón, Nixon, Hargrave, Devans & Doyle, Rochester, New York, on the brief), for Defendant–Appellee.

Before: KEARSE, CALABRESI, and CABRANES, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge:

This is a consolidated appeal from a final judgment of the United States District Court for the Southern District of New York (Morris E. Lasker, *Judge*), granting defendant-appellee Eastman Kodak Company's motion for summary judgment and dismissing all claims against it in two actions, *Fletcher v. Atex, Inc.*, 92 Civ. 8758 and *Hermanson v. 805 Middlesex Corp., Inc.*, 94 Civ. 1272. *Fletcher v. Atex, Inc.*, 861 F.Supp. 242 (S.D.N.Y.1994). The plaintiffs-appellants filed suit against Atex, Inc. ("Atex") and its parent, Eastman Kodak Company ("Kodak"), to recover for repetitive stress injuries that they claim were caused by their use of computer keyboards manufactured by Atex.

Plaintiffs-appellants argue that the district court erred in granting summary judgment in favor of Kodak on the ground that Kodak could be held liable for the plaintiffs' alleged injuries. They contend that summary judgment was inappropriate because genuine issues of material fact existed regarding Kodak's liability as a defendant under each of the plaintiffs' four theories of liability, which we describe below.

## I. BACKGROUND

The *Fletcher* and *Hermanson* plaintiffs filed their respective complaints on December 4, 1992, and February 25, 1994, seeking recovery from Atex and Kodak, among others, for repetitive stress injuries that they claim were caused by their use of Atex computer keyboards. From 1981 until December 1992, Atex was a wholly-owned subsidiary of Kodak. In 1987, Atex's name was changed to Electronic Pre–Press Systems, Inc., ("EPPS"), but its name was changed back to Atex in 1990. In December 1992, Atex sold substantially all of its assets to an independent third party and again changed its name to 805 Middlesex Corp., which holds the proceeds from the sale. Kodak continues to be the sole shareholder of 805 Middlesex Corp.

After extensive discovery, Kodak moved for summary judgment in *Fletcher* on April 21, 1994, and in *Hermanson* on April 28, 1994. The plaintiffs opposed Kodak's motion, arguing that genuine issues of material fact existed as to Kodak's liability under any number of theories, including (1) that Atex was merely Kodak's alter ego or instrumentality; (2) that Atex was Kodak's agent in the manufacture and marketing of the keyboards; (3) that Kodak was the "apparent manufacturer" of the Atex keyboards; and (4) that Kodak acted in tortious concert with Atex in manufacturing and marketing the allegedly defective keyboards.

In support of their first theory, the plaintiffs argued that Kodak "dominated and controlled" Atex by maintaining significant overlap between the boards of directors of the two companies, "siphoning" off funds from Atex through use of a cash management system, requiring Kodak's approval for major expenditures, stock sales, and real estate acquisitions, participating in negotiations involving the sale of Atex to a third party, and including references to Atex as a "division" of Kodak and to the "merger" between Atex and Kodak in Atex's promotional literature and Kodak's Annual Report. Second, the plaintiffs claimed that, at the very least, the references to Atex in the promotional literature raised a question of material fact regarding Kodak's intent to confer authority on Atex to act as its agent in the manufacturing and marketing of computer keyboards. In support of their third theory, the plaintiffs maintained that the use of Kodak's name in Atex's advertising, promotional, and packaging materials provided assurances to consumers that the Kodak name stood behind Atex's products, and Kodak could thus be held liable as the "apparent manufacturer" of the keyboards. Finally, they argued that the fact that Kodak was generally aware of the danger of repetitive stress injuries and the fact that Kodak had tested the ergonomics of three Atex keyboards in 1990 presented evidence of concerted tortious action between Atex and Kodak. The *Fletcher* and *Hermanson* actions were consolidated before the district court for the purposes of summary judgment proceedings.

On August 17, 1994, the district court rejected each of the plaintiffs' theories of Kodak's liability and granted Kodak's motion for summary judgment in both actions. In its opinion, the court referred to, but did not rely upon, an identical suit filed against Atex and Kodak in New York state court, *King v. Eastman Kodak Co.*, No. 23439/92 (N.Y.Sup. Ct. June 9, 1994), in which Kodak's motion for summary judgment was granted on similar grounds. *Fletcher*, 861 F.Supp. at 243.

First, the district court found that Kodak and Atex observed all corporate formalities and maintained separate corporate existences. It held that Atex's participation in Kodak's cash management system and Kodak's control over Atex's major expenditures and asset sales were insufficient to raise an issue of material fact regarding Kodak's liability under an alter ego theory. *Id.* at 244–45. Second, it held that the representations in various advertisements, promotional litera-

ture, and annual reports were similarly insufficient as a matter of law to find Kodak liable under an agency theory. *Id.* at 247. Third, the court held that Kodak was entitled to summary judgment on the plaintiffs' apparent manufacturer theory because the company was not involved in the sale or distribution of the keyboards. *Id.* at 245–46. Finally, the court found that the plaintiffs' concerted action theory failed as a matter of law because they offered no evidence indicating that Kodak and Atex had agreed to commit a tortious act. *Id.* at 246. This appeal followed.

## II. DISCUSSION

### A. The Summary Judgment Standard

We review a district court's grant of summary judgment *de novo* to determine whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Healy v. Rich Prods. Corp.,* 981 F.2d 68, 72 (2d Cir. 1992). Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) (emphasis in original). While the court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), a party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The non-moving party may defeat the summary judgment motion by producing

sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Finally, " 'mere conclusory allegations or denials' " in legal memoranda or oral argument are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist. *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980) (quoting *SEC v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir.1978)).

### B. Theories of Liability

Plaintiffs argue that the district court should have denied Kodak's motion for summary judgment on the ground that genuine issues of material fact existed regarding each of the plaintiffs' four theories of liability. We consider the plaintiffs' arguments on each of these theories in turn.

#### 1. Alter Ego Liability

The plaintiffs claim that the district court erred in granting Kodak's motion for summary judgment on their alter ego theory of liability. The plaintiffs offer two arguments in this regard. First, they contend that the district court was estopped from granting Kodak's motion for summary judgment because the New York state court found in *King v. Eastman* that issues of material fact existed regarding Kodak's domination of Atex. Second, they argue that even if collateral estoppel does not apply in the instant case, genuine issues of material fact remain that preclude a grant of summary judgment in favor of Kodak.

The district court correctly noted that "[u]nder New York choice of law principles, '[t]he law of the state of incorporation determines when the corporate form will be disregarded and liability will be imposed on shareholders.' " *Fletcher,* 861 F.Supp. at 244 (quoting *Kalb, Voorhis & Co. v. American Fin. Corp.,* 8 F.3d 130, 132 (2d Cir.1993)). Because Atex was a Delaware corporation, Delaware law determines whether the corporate veil can be pierced in this instance.

■ Delaware law permits a court to pierce the corporate veil of a company "where there is fraud or where [it] is in fact a mere instrumentality or alter ego of its owner." *Geyer v. Ingersoll Publications Co.*, 621 A.2d 784, 793 (Del.Ch.1992). Although the Delaware Supreme Court has never explicitly adopted an alter ego theory of parent liability for its subsidiaries, lower Delaware courts have applied the doctrine on several occasions, as has the United States District Court for the District of Delaware. *See Geyer*, 621 A.2d at 793; *Mabon, Nugent & Co. v. Texas Am. Energy Corp.*, No. CIV.A. 8578, 1990 WL 44267, at *5, (Del.Ch. Apr. 12, 1990); *Harper v. Delaware Valley Broadcasters, Inc.*, 743 F.Supp. 1076, 1085 (D.Del.1990), *aff'd*, 932 F.2d 959 (3d Cir.1991). Thus, under an alter ego theory, there is no requirement of a showing of fraud. *Id.* at 1085. To prevail on an alter ego claim under Delaware law, a plaintiff must show (1) that the parent and the subsidiary "operated as a single economic entity" and (2) that an "overall element of injustice or unfairness ... [is] present." *Id.* (internal quotation marks omitted); *see also Mabon*, 1990 WL 44267, at *5; *Harco Nat'l Ins. Co. v. Green Farms, Inc.*, No. CIV.A. 1331, 1989 WL 110537, at *5, (Del Ch. Sept. 19, 1989).

In the New York state action of *King v. Eastman*, the court granted Kodak's motion for summary judgment, relying on an erroneous interpretation of Delaware's alter ego doctrine. The court noted that although the plaintiffs had raised "ample questions of fact regarding the first element of the piercing theory—domination," they made "no showing that Kodak used whatever dominance it had over Atex to perpetrate a fraud or other wrong that proximately cause[d] injury to them." This was an error; under Delaware law, the alter ego theory of liability does not require any showing of fraud.

### a. Collateral Estoppel

■ Although the plaintiffs acknowledge that the New York state court erred in its interpretation of Delaware law, they argue that the court's treatment of the question of Kodak's domination over Atex should preclude all further litigation of that issue. We disagree and hold that the New York court's findings in *King v. Eastman* regarding Kodak's domination over Atex do not have collateral estoppel effect under New York law.

■ The doctrine of collateral estoppel "precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party ... whether or not the tribunals or causes of action are the same." *Ryan v. New York Tel. Co.*, 62 N.Y.2d 494, 500, 478 N.Y.S.2d 823, 826, 467 N.E.2d 487, 490 (1984) (citing *Ripley v. Storer*, 309 N.Y. 506, 517, 132 N.E.2d 87 (1956)). Under New York law, two conditions must be met to preclude relitigation in the second action: (1) "the issue must have been material to the first action or proceeding and essential to the decision rendered therein" and (2) "the party against whom collateral estoppel is asserted [must have been] afforded a full and fair opportunity in the prior administrative proceeding to contest the decision now said to be controlling...." 62 N.Y.2d at 500–01, 478 N.Y.S.2d at 826, 467 N.E.2d at 490. Neither condition was met in this case.

First, the state court's finding of "ample questions of fact" regarding Kodak's domination of Atex was not essential to its judgment in *King*. The state court did not decide the summary judgment motion based on its finding of factual disputes between the parties. To the contrary, it *granted* summary judgment to Kodak on the plaintiffs' alter ego theory of liability based on its erroneous interpretation of Delaware law. Since the court's finding of domination was not essential to the judgment, its conclusions should not be accorded preclusive effect in the present action.

The plaintiffs counter that the state court's finding of a factual dispute on the issue of domination should be given preclusive effect, even though it was not essential to the judgment, because it was fully litigated by the parties and fully considered by the court. They rely on *Malloy v. Trombley*, 50 N.Y.2d 46, 427 N.Y.S.2d 969, 405 N.E.2d 213 (1980), which held that a court's alternative holding, while not essential to the judgment, could be given conclusive effect. However, the *Malloy* court carefully limited its holding:

"[W]ithout intending to enunciate any broad rule, we hold in this instance that the rule of issue preclusion is applicable notwithstanding that in a precise sense the issue precluded was the subject of only an alternative determination by the trial court." 50 N.Y.2d at 52, 427 N.Y.S.2d at 973, 405 N.E.2d at 216. In *Malloy,* the trial court articulated a viable alternative ground to *support* its conclusion, a ground that the Court of Appeals noted had "validating authenticity" because it was likely expressed by the trial court to provide another basis for affirmance in case the other ground was rejected on appeal. 50 N.Y.2d at 52, 427 N.Y.S.2d at 972, 405 N.E.2d at 215. Here, the trial court's finding of a factual dispute on the issue of domination was not an alternative holding at all. It was *at odds* with the court's conclusion that summary judgment was appropriate and certainly did not provide "validating authenticity" for the court's holding.

 Second, the court's finding of a factual dispute cannot have collateral estoppel effect because Kodak did not have a "full and fair opportunity" to litigate the question that the plaintiffs are asserting against it. Under New York law, a party has not had a full and fair opportunity to litigate an issue if it has had no opportunity to appeal the adverse finding. *People v. Medina,* 208 A.D.2d 771, 617 N.Y.S.2d 491, 493 (2d Dep't 1994); *see also Pinkney v. Keane,* 737 F.Supp. 187, 195 (E.D.N.Y.) ("Under New York law, a party who has obtained a final judgment in its favor is not normally precluded from relitigating a subsidiary issue that was decided against it."), *aff'd,* 920 F.2d 1090 (2d Cir. 1990), *cert. denied,* 501 U.S. 1217, 111 S.Ct. 2824, 115 L.Ed.2d 995 (1991). Kodak was in precisely this situation. It *could not* appeal the trial court's finding of a material factual dispute, because the final judgment—that is, the grant of summary judgment—was in Kodak's favor.

In sum, the collateral estoppel doctrine does not bar the relitigation of the question of Kodak's domination over its subsidiary, Atex, because the state court's finding was not essential to its judgment and because Kodak did not have a full and fair opportunity to litigate the issue.

### b. *Summary Judgment on the Alter Ego Theory*

 To prevail on an alter ego theory of liability, a plaintiff must show that the two corporations " 'operated as a single economic entity such that it would be inequitable ... to uphold a legal distinction between them.' " *Harper,* 743 F.Supp. at 1085 (quoting *Mabon,* 1990 WL 44267, at *5). Among the factors to be considered in determining whether a subsidiary and parent operate as a "single economic entity" are:

> "[W]hether the corporation was adequately capitalized for the corporate undertaking; whether the corporation was solvent; whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds; and whether, in general, the corporation simply functioned as a facade for the dominant shareholder."

*Harco,* 1989 WL 110537, at *4 (quoting *United States v. Golden Acres, Inc.,* 702 F.Supp. 1097, 1104 (D.Del.1988)). As noted above, a showing of fraud or wrongdoing is not necessary under an alter ego theory, but the plaintiff must demonstrate an overall element of injustice or unfairness. *Harco,* 1989 WL 110537, at *5.

A plaintiff seeking to persuade a Delaware court to disregard the corporate structure faces "a difficult task." *Harco,* 1989 WL 110537, at *4. Courts have made it clear that "[t]he legal entity of a corporation will not be disturbed until sufficient reason appears." *Id.* Although the question of domination is generally one of fact, courts have granted motions to dismiss as well as motions for summary judgment in favor of defendant parent companies where there has been a lack of sufficient evidence to place the alter ego issue in dispute. *See, e.g., Akzona, Inc. v. Du Pont,* 607 F.Supp. 227, 237 (D.Del. 1984) (rejecting plaintiffs' alter ego theory of liability on a motion to dismiss); *Nelson v. International Paint Co.,* 734 F.2d 1084, 1092 (5th Cir.1984) ("[I]n the lack of sufficient evidence to place the alter ego issue in dispute, a corporate defendant may be entitled

to summary judgment."); *see also Japan Petroleum Co. (Nigeria) v. Ashland Oil Inc.*, 456 F.Supp. 831, 838, 846 (D.Del.1978) (finding that subsidiary was not instrumentality of parent on a motion for summary judgment).

■ Kodak has shown that Atex followed corporate formalities, and the plaintiffs have offered no evidence to the contrary. Significantly, the plaintiffs have not challenged Kodak's assertions that Atex's board of directors held regular meetings, that minutes from those meetings were routinely prepared and maintained in corporate minute books, that appropriate financial records and other files were maintained by Atex, that Atex filed its own tax returns and paid its own taxes, and that Atex had its own employees and management executives who were responsible for the corporation's day-to-day business. The plaintiffs' primary arguments regarding domination concern (1) the defendant's use of a cash management system; (2) Kodak's exertion of control over Atex's major expenditures, stock sales, and the sale of Atex's assets to a third party; (3) Kodak's "dominating presence" on Atex's board of directors; (4) descriptions of the relationship between Atex and Kodak in the corporations' advertising, promotional literature, and annual reports; and (5) Atex's assignment of one of its former officer's mortgage to Kodak in order to close Atex's asset-purchase agreement with a third party. The plaintiffs argue that each of these raises a genuine issue of material fact about Kodak's domination of Atex, and that the district court therefore erred in granting summary judgment to Kodak on the plaintiffs' alter ego theory. We find that the district court correctly held that, in light of the undisputed factors of independence cited by Kodak, "the elements identified by the plaintiffs ... [were] insufficient as a matter of law to establish the degree of domination necessary to disregard Atex's corporate identity." *Fletcher*, 861 F.Supp. at 245.

First, the district court correctly held that "Atex's participation in Kodak's cash management system is consistent with sound business practice and does not show undue domination or control." *Id.* at 244. The parties do not dispute the mechanics of Kodak's cash management system. Essentially, all of Kodak's domestic subsidiaries participate in the system and maintain zero-balance bank accounts. All funds transferred from the subsidiary accounts are recorded as credits to the subsidiary, and when a subsidiary is in need of funds, a transfer is made. At all times, a strict accounting is kept of each subsidiary's funds.

Courts have generally declined to find alter ego liability based on a parent corporation's use of a cash management system. *See, e.g., In re Acushnet River & New Bedford Harbor Proceedings*, 675 F.Supp. 22, 34 (D.Mass.1987) (Without "considerably more," "a centralized cash management system ... where the accounting records always reflect the indebtedness of one entity to another, is not the equivalent of intermingling funds" and is insufficient to justify disregarding the corporate form.); *United States v. Bliss*, 108 F.R.D. 127, 132 (E.D.Mo.1985) (cash management system indicative of the "usual parent-subsidiary relationship"); *Japan Petrol.*, 456 F.Supp. at 846 (finding segregation of subsidiary's accounts within parent's cash management system to be "a function of administrative convenience and economy, rather than a manifestation of control"). The plaintiffs offer no facts to support their speculation that Kodak's centralized cash management system was actually a "complete commingling" of funds or a means by which Kodak sought to "siphon[ ] all of Atex's revenues into its own account."

Second, the district court correctly concluded that it could find no domination based on the plaintiffs' evidence that Kodak's approval was required for Atex's real estate leases, major capital expenditures, negotiations for a sale of minority stock ownership to IBM, or the fact that Kodak played a significant role in the ultimate sale of Atex's assets to a third party. Again, the parties do not dispute that Kodak required Atex to seek its approval and/or participation for the above transactions. However, this evidence, viewed in the light most favorable to the plaintiffs, does not raise an issue of material fact about whether the two corporations constituted "a single economic entity." Indeed,

this type of conduct is typical of a majority shareholder or parent corporation. *See Phoenix Canada Oil Co. v. Texaco,* 842 F.2d 1466, 1476 (3d Cir.1988) (declining to pierce the corporate veil where subsidiary required to secure approval from parent for "large investments and acquisitions or disposals of major assets"), *cert. denied,* 488 U.S. 908, 109 S.Ct. 259, 102 L.Ed.2d 247 (1988); *Akzona,* 607 F.Supp. at 237 (same, where parent approval required for expenditures exceeding $850,000); *Japan Petrol.,* 456 F.Supp. at 843 (finding no parent liability where parent approval required for expenditures exceeding $250,000). In *Akzona,* the Delaware district court noted that a parent's "general executive responsibilities" for its subsidiary's operations included approval over major policy decisions and guaranteeing bank loans, and that that type of oversight was insufficient to demonstrate domination and control. *Akzona,* 607 F.Supp. at 238 (internal quotation marks omitted). Similarly, the district court in the instant case properly found that the presence of Kodak employees at periodic meetings with Atex's chief financial officer and comptroller to be "entirely appropriate." *Fletcher,* 861 F.Supp. at 245 (citing *Akzona,* 607 F.Supp. at 238); *see Acushnet,* 675 F.Supp. at 34 ("The quarterly and annual reports made [to the parent] do not represent an untoward intrusion by the owner into the corporate enterprise. The right of shareholders to remain informed is similarly recognized in many public and closely held corporations.").

The plaintiffs' third argument, that Kodak dominated the Atex board of directors, also fails. Although a number of Kodak employees have sat on the Atex board, it is undisputed that between 1981 and 1988, only one director of Atex was also a director of Kodak. Between 1989 and 1992, Atex and Kodak had no directors in common. Parents and subsidiaries frequently have overlapping boards of directors while maintaining separate business operations. In *Japan Petroleum,* the Delaware district court held that the fact that a parent and a subsidiary have common officers and directors does not necessarily demonstrate that the parent corporation dominates the activities of the subsidiary. 456 F.Supp. at 841; *see Scott–Douglas Corp. v.*

*Greyhound Corp.,* 304 A.2d 309, 314 (Del.Super.Ct.1973) (same). Since the overlap is negligible here, we find this evidence to be entirely insufficient to raise a question of fact on the issue of domination.

Fourth, the district court properly rejected the plaintiffs' argument that the descriptions of the relationship between Atex and Kodak and the presence of the Kodak logo in Atex's promotional literature justify piercing the corporate veil. *Fletcher,* 861 F.Supp. at 245. The plaintiffs point to several statements in both Kodak's and Atex's literature to evidence Kodak's domination of its subsidiary. For example, plaintiffs refer to (1) a promotional pamphlet produced by EPPS (a/k/a Atex) describing Atex as a business unit of EPPS and noting that EPPS was an "agent" of Kodak; (2) a document produced by Atex entitled "An Introduction to Atex Systems," which describes a "merger" between Kodak and Atex; (3) a statement in Kodak's 1985 and 1986 annual reports describing Atex as a "recent acquisition[ ]" and a "subsidiar[y] ... combined in a new division"; and (4) a statement in an Atex/EPPS document, "Setting Up TPE 6000 on the Sun 3 Workstation," describing Atex as "an unincorporated division of Electronic Pre–Press Systems, Inc., a Kodak company." They also refer generally to the fact that Atex's paperwork and packaging materials frequently displayed the Kodak logo.

It is clear from the record that Atex never merged with Kodak or operated as a Kodak division. The plaintiffs offer no evidence to the contrary, apart from these statements in Atex and Kodak documents that they claim are indicative of the true relationship between the two companies. Viewed in the light most favorable to the plaintiffs, these statements and the use of the Kodak logo are not evidence that the two companies operated as a "single economic entity." *See Coleman v. Corning Glass Works,* 619 F.Supp. 950, 956 (W.D.N.Y.1985) (upholding corporate form despite "loose language" in annual report about "merger" and parent's reference to subsidiary as a "division"), *aff'd,* 818 F.2d 874 (1987); *Japan Petrol.,* 456 F.Supp. at 846 (noting that representations made by parent in its annual reports that subsidiary

serves as an agent "may result from public relations motives or an attempt at simplification"); *American Trading & Prod. Corp. v. Fischbach & Moore, Inc.,* 311 F.Supp. 412, 416 (N.D.Ill.1970) ("boastful" advertising and consideration of subsidiaries as "family" do not prove that corporate identities were ignored).

Fifth, the plaintiffs contend that Atex's assignment of its former CEO's mortgage to Kodak in order to close the sale of Atex's assets to a third party is evidence of Kodak's domination of Atex. We reject this argument as well. The evidence is undisputed that Kodak paid Atex the book value of the note and entered into a formal repayment agreement with the former CEO. Formal contracts were executed, and the two companies observed all corporate formalities.

Finally, even if the plaintiffs did raise a factual question about Kodak's domination of Atex, summary judgment would still be appropriate because the plaintiffs offer no evidence on the second prong of the alter ego analysis. The plaintiffs have failed to present evidence of an "overall element of injustice or unfairness" that would result from respecting the two companies' corporate separateness. *See Harper,* 743 F.Supp. at 1085 (holding that plaintiff cannot prevail on alter ego theory "because he has failed to allege any unfairness or injustice which would justify the court in disregarding the [companies'] separate legal existences"). In the instant case, the plaintiffs offer nothing more than the bare assertion that Kodak "exploited" Atex "to generate profits but not to safeguard safety." There is no indication that Kodak sought to defraud creditors and consumers or to siphon funds from its subsidiary. The plaintiffs' conclusory assertions, without more, are not evidence, *see Quinn,* 613 F.2d at 445, and are completely inadequate to support a finding that it would be unjust to respect Atex's corporate form.

For all of the foregoing reasons, the district court's order entering summary judgment on the plaintiffs' alter ego theory of liability is affirmed.

## 2. *Agency Liability*

The plaintiffs next contend that a genuine issue of fact was raised as to whether Kodak could be held liable on an agency theory—that is, whether Kodak, as principal, could be liable for the tortious acts of Atex, its agent. The plaintiffs rely on statements in Atex/EPPS literature to support their theory: (1) the statement in the Atex document "Setting Up TPE 6000 on the Sun 3 Workstation" that "Atex is an unincorporated division of Electronic Pre–Press Systems, Inc., a Kodak company"; and (2) the statements in the EPPS promotional pamphlet that "EPPS serves as Kodak's primary agent to supply electronic pre-press products" and that "Atex is the largest of the EPPS business units." In granting Kodak's motion for summary judgment, the district court rejected the plaintiffs' agency theory of liability, finding that there was no evidence that Kodak authorized the statements. *Fletcher,* 861 F.Supp. at 247.

■ The plaintiffs contend that the fact that Kodak permitted the use of its logo on these documents raises a question of fact as to whether Kodak authorized or appeared to authorize the references to Atex/EPPS as its agent. First, the plaintiffs' argument fails under a theory of actual authority. The Restatement (Second) of Agency states: "Authority is the power of the agent to affect the legal relations of the principal by acts done in accordance with the principal's manifestations of consent to him." RESTATEMENT (SECOND) OF AGENCY § 7 (1958). "Manifestation of consent" is "the expression of the will to another as distinguished from the undisclosed purpose or intention." *Id.* cmt. b; *see also Greene v. Hellman,* 51 N.Y.2d 197, 203–04, 433 N.Y.S.2d 75, 79, 412 N.E.2d 1301, 1305 (1980). A close reading of the record reveals no evidence that Kodak conferred actual authority upon Atex to act on its behalf. The plaintiffs have offered no evidence that either document was produced by Kodak; in fact, it appears that Atex and EPPS published and disseminated the documents at issue. The presence of a parent's logo on documents created and distributed by a subsidiary, standing alone, does not confer au-

thority upon the subsidiary to act as an agent.

■ For similar reasons, plaintiffs' arguments fail under a theory of apparent authority. New York's Court of Appeals has made it clear that "apparent authority is dependent upon verbal or other acts *by a principal* which reasonably give an appearance of authority to conduct the transaction." *Greene,* 51 N.Y.2d at 204, 433 N.Y.S.2d at 80, 412 N.E.2d at 1306 (emphasis added) (citing RESTATEMENT (SECOND) OF AGENCY § 8 cmts. a, c). "Key to the creation of apparent authority," the court continued, "is that the third person, accepting the appearance of authority as true, has relied upon it." *Id.* The plaintiffs offer no evidence that Kodak authorized or gave the appearance of having authorized the statements in the Atex/EPPS documents. Atex's/EPPS's use of the Kodak logo is not a "verbal or other act[ ] by a *principal,*" but rather, an act by the purported agent. Furthermore, the record contains no evidence that the plaintiffs relied on the documents at issue. If there were evidence that the plaintiffs relied on these documents and if there were evidence that Kodak uttered or authorized them, then there would be an issue of material fact as to the existence of apparent authority. However, there is neither. We affirm the district court's order granting summary judgment to the defendant on the plaintiffs' agency theory of liability.

### 3. Apparent Manufacturer

■ The plaintiffs' third theory of liability is that Kodak should be held liable as the "apparent manufacturer" of the Atex keyboards. RESTATEMENT (SECOND) OF TORTS § 400 (1965). The apparent manufacturer doctrine is set forth in the Restatement as follows: "One who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer." *Id.* This theory of liability is well-established under New York law. *See Commissioners of State Ins. Fund v. City Chem. Corp.,* 290 N.Y. 64, 69, 48 N.E.2d 262 (1943); *Markel v. Spencer,* 5 A.D.2d 400, 171 N.Y.S.2d 770, 780 (4th Dep't

1958), *aff'd,* 5 N.Y.2d 958, 184 N.Y.S.2d 835, 157 N.E.2d 713 (1959).

The district court held that Kodak could not be held liable under the apparent manufacturer doctrine because "[t]here is no indication in the Restatement [and in New York case law] that Section 400 was intended to apply to a party which is not a seller of chattel, or is [not] otherwise involved in the chain of distribution of a product." *Fletcher,* 861 F.Supp. at 245. In support of its holding, the district court cited the New York state court ruling in *King v. Eastman,* which held that Kodak was not liable under this section because, *inter alia,* it was not involved in the sale or distribution of the allegedly defective keyboards. *Id.* at 246. The *King* court relied on two federal court opinions, which similarly limited the application of § 400. *See Torres v. Goodyear Tire and Rubber Co.,* 867 F.2d 1234, 1236 (9th Cir. 1989) (parent not liable under § 400 for subsidiary's product where it was not manufacturer or seller); *Affiliated FM Ins. Co. v. Trane Co.,* 831 F.2d 153, 156 (7th Cir.1987) (parent not liable under § 400 in the absence of evidence that it was involved in manufacture, sale, or installation of product); *see also Nelson,* 734 F.2d at 1087–88 (section 400 does not apply to one who allows manufacturer to use its name but was not itself a manufacturer nor a distributor of the product).

Kodak argues that the district court's conclusion is supportable on three different theories. First, § 400 cannot apply because Kodak was neither the seller nor the distributor of the allegedly defective keyboards. Second, even if § 400 liability could reach a party who did not sell or distribute the products in question, it does not apply to Kodak in this instance because the Kodak logo was not affixed to the keyboards or their packages, only to promotional and advertising materials. Finally, even if § 400 can apply when a defendant's name appears only on promotional and packaging materials, the materials submitted here do not suggest that Kodak, rather than Atex, manufactured the keyboards. We agree.

First, New York courts have only applied the apparent manufacturer doctrine to sellers

of a product or parties otherwise involved in the chain of distribution. The commentary to the Restatement states:

> The words "one who puts out a chattel" include anyone who supplies it to others for their own use or for the use of third persons, *either by sale or lease or by gift or loan.*

RESTATEMENT (SECOND) OF TORTS § 400 cmt. a (emphasis added). Although no New York court, with the exception of the *King* court, has explicitly declined to apply § 400 where a parent arguably represents itself as the manufacturer of a product without participating in its sale or distribution, no New York court has ever extended liability under the doctrine to anyone other than sellers of products manufactured by third parties. *See Willson v. Faxon, Williams & Faxon,* 208 N.Y. 108, 113, 101 N.E. 799 (1913) (finding seller of laxatives could be held liable under apparent manufacturer doctrine where seller purchased tablets from manufacturer and affixed its own label to the product); *State Ins. Fund,* 290 N.Y. at 69, 48 N.E.2d 262 (finding chemical vendor could be held liable under earlier version of § 400 where vendor purchased chemicals from a distributor, removed distributor's label, and affixed its own); *Markel,* 171 N.Y.S.2d at 780 (finding defendant Ford Motor Company liable for malfunctioning brake pedal arm that it sold as a component part of a Ford automobile); *Schwartz v. Macrose Lumber & Trim Co.,* 50 Misc.2d 547, 270 N.Y.S.2d 875, 889 (Sup.Ct. Queens County 1966) (finding vendor liable under apparent manufacturer doctrine for defective nail in box sold by vendor under vendor's name), *rev'd on other grounds,* 29 A.D.2d 781, 287 N.Y.S.2d 706 (2d Dep't 1968).

In support of their argument for § 400 liability, the plaintiffs draw our attention to several cases in other jurisdictions. All of these cases are distinguishable. Although they hold that participation in the chain of distribution is not essential to liability under the apparent manufacturer doctrine, each involved a licensing agreement in which the defendant allowed the use of its name in exchange for control over (or involvement in) the manufacture of the product. *See Kasel v. Remington Arms Co.,* 24 Cal.App.3d 711, 718, 724, 101 Cal.Rptr. 314 (2d Dist.1972) (licensor who retains "right to inspect and control the quality" of product could be liable as an "integral component[ ] of the ... enterprise responsible for placing ... products on the market"); *City of Hartford v. Assoc. Constr. Co.,* 34 Conn.Supp. 204, 384 A.2d 390, 393, 396 (1978) (licensor who "retained and exercised rights of control as to the quality and the methods and manner of application of the product" could be held liable under § 400); *Connelly v. Uniroyal, Inc.,* 75 Ill.2d 393, 408, 411, 27 Ill.Dec. 343, 389 N.E.2d 155 (1979) (licensor who remained involved with "the goods and manufacturing operations" of product liable under § 400 as an "integral part of the marketing enterprise"), *cert. denied,* 444 U.S. 1060, 100 S.Ct. 992, 62 L.Ed.2d 738 (1980).

In the instant case, the plaintiffs have not produced any evidence that Kodak developed, designed, sold or distributed the allegedly defective keyboards. Contending otherwise, the plaintiffs point to the fact that Atex, in response to an interrogatory, listed Kodak among over thirty companies that were "involved in the design, manufacture, sale, marketing, leasing and/or installation of Atex keyboards." This interrogatory, however, was amended to delete Kodak from the list, and defendant's attorney submitted an affirmation attesting that the inclusion of Kodak was in error. Plaintiffs have submitted no other evidence of Kodak's actual participation in the manufacturing or distribution process; nor have they submitted any evidence of a licensing agreement between Kodak and Atex.

Second, even assuming that New York law permits a party that did not sell or distribute a product to be held liable under the apparent manufacturer doctrine, the plaintiffs offer no evidence that Kodak held itself out as the manufacturer of the Atex keyboard. *See* RESTATEMENT (SECOND) OF TORTS § 400. There is no question that the keyboards prominently display the name of Atex, the true manufacturer, and the plaintiffs do not dispute the defendant's assertion that the Kodak logo was not affixed to the Atex keyboards or their packages. Under these circumstances, it is difficult to understand how

any defendant could be held liable on an apparent manufacturer theory. Indeed, the cases cited by the plaintiffs only extend § 400 liability to defendants who placed their names directly on the product or the product packaging at issue. *See Willson,* 208 N.Y. at 110, 113, 101 N.E. 799 (defendant could be held liable where vial containing tablets causing plaintiff's injuries labeled with defendant's name); *State Ins. Fund,* 290 N.Y. at 69, 48 N.E.2d 262 (defendant could be held liable where inscription on label of product bore defendant's name); *Markel,* 171 N.Y.S.2d at 780 (defendant liable for defective component part where vehicle marked with defendant's name); *Schwartz,* 270 N.Y.S.2d at 889 (defendant liable where plaintiff injured by nail packaged in box labeled with defendant's name); *Forry v. Gulf Oil Corp.,* 428 Pa. 334, 344, 237 A.2d 593 (1968) (defendant could be held liable where tire embossed with its name); *Carney v. Sears, Roebuck & Co.,* 309 F.2d 300, 304 (4th Cir.1962) (defendant could be held liable where its name appeared on defective product's label as well as in advertising).

Third, even if apparent manufacturer liability could extend to a defendant whose name appears only on promotional and advertising materials, rather than on the product itself, the materials offered by the plaintiffs do not suggest that Kodak manufactured the Atex keyboards. Many of the documents that the plaintiffs rely on make reference only to Atex computer *software,* such as the Atex "Color Imaging System" and the "PC Custom Display Software User Manual." Furthermore, Atex is repeatedly identified as the manufacturer of the Atex computer systems in all the documents identified by the plaintiffs. Under these circumstances, the plaintiffs' argument—that the presence of the Kodak logo on these documents is sufficient to raise an issue of material fact as to whether Kodak represented itself as the manufacturer of the keyboards—must fail.

For these reasons, we affirm the district court's order granting summary judgment for the defendant-appellee on the plaintiffs' apparent manufacturer theory of liability.

### 4. Concerted Tortious Action

The plaintiffs' final theory of liability is that Kodak acted in tortious concert with Atex in designing and marketing the allegedly defective keyboards. The plaintiffs present alternative arguments for Kodak's liability under the so-called concerted action doctrine. First, they argue that "the evidence of Kodak's direct participation in the marketing of the defective keyboard equipment" raises an issue of material fact regarding Kodak's acting in concert with Atex. In the alternative, they argue that Kodak could be liable under a separate theory of concerted action under which liability may be premised upon "concerted action by substantial assistance."

Section 876 of the Restatement (Second) of Torts provides that:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
>
> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
>
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself. . . .

It remains an open question under New York law whether concerted action liability can be premised on a showing of concerted action by "substantial assistance or encouragement." Although the New York Court of Appeals has referred to both the traditional "common design" approach as well as the "substantial assistance" theory of concerted action, *see Bichler v. Eli Lilly & Co.,* 55 N.Y.2d 571, 580–81, 450 N.Y.S.2d 776, 780, 436 N.E.2d 182, 186 (1982), no cases have ever applied the "substantial assistance" approach. We find it unnecessary to decide this question of New York law at this time, because the plaintiffs' claim fails as a matter of law under either theory.

 Under the first theory of concerted action, New York law "provides for joint and several liability on the part of all defendants having an understanding, express or tacit, to participate in a common plan or design to commit a tortious act." *Rastelli v. Goodyear Tire & Rubber Co.,* 79 N.Y.2d 289,

295, 582 N.Y.S.2d 373, 375, 591 N.E.2d 222, 224 (1992) (internal quotation marks omitted). The Court of Appeals has held that "[i]t is essential that each defendant charged with acting in concert have acted tortiously and that one of the defendants committed an act in pursuance of the agreement which constitutes a tort." *Id.* The plaintiffs argue that various statements in the Atex/EPPS literature and the use of the Kodak logo on certain documents packaged with Atex products, as well as the fact that Atex's interrogatory answer initially listed Kodak among the companies "involved in the design, manufacture, sale, marketing, leasing and/or installation of Atex keyboards," demonstrate Kodak's "full collaboration" in the marketing of the keyboards. In addition, the plaintiffs present various reports and documents on ergonomics [1] and repetitive stress injuries that Kodak created for the use of its own employees as evidence that "Kodak was fully aware of both the hazards associated with keyboard use and the means of reducing or eliminating those hazards." Finally, they rely on the Kodak Design Resource Center's evaluation of the ergonomics of three Atex keyboards in 1990 as evidence that "Kodak was a full participant with Atex in the deliberations about whether to warn users of the Kodak/Atex equipment, exactly what such warnings should state, and what would be the risks of not issuing such warnings."

As the district court correctly held, "none of this tends to show that Kodak and Atex had 'an understanding ... to participate in a common plan or design to commit a tortious act.'" *Fletcher,* 861 F.Supp. at 246 (alteration in original) (quoting *Rastelli,* 79 N.Y.2d at 295, 582 N.Y.S.2d at 375, 591 N.E.2d at 224). As noted above, the defendant's attorney submitted an affirmation attesting that the answer to the interrogatory was an error, and the plaintiffs have offered no additional evidence that Kodak actually participated in the design or manufacture of the Atex keyboards. The documents offered by the plain-

tiffs do not suggest any "agreement" between Kodak and Atex to act "jointly and tortiously." They merely refer to general statements about the "merger" between Atex and Kodak and the "marriage" between the two companies.

Furthermore, none of the evidence demonstrates that Kodak's actions were tortious. The fact that Kodak prepared guidelines for its employees to use in relation to their own computer workstations does not constitute tortious conduct with regard to the keyboards developed and sold by Atex. There is no allegation that Kodak's internal guidelines were ever used in conjunction with the design or manufacture of the Atex keyboards. Likewise, while it is undisputed that Atex retained Kodak's Design Resource Center to evaluate the ergonomics of various Atex keyboards in 1990, nothing contradicts the evidence in the record that this evaluation occurred only after all of the keyboards at issue had been designed, developed, and manufactured. Furthermore, the plaintiffs have offered no shred of evidence to support their speculation that "Kodak was a full participant with Atex in the deliberations about whether to warn users of the Kodak/Atex equipment." Nothing contradicts the defendant's evidence that Atex retained Kodak as an "independent organization" solely to conduct a single evaluation of three Atex keyboards. Finally, there is no allegation that Kodak's laboratory performed the tests on the Atex equipment negligently or provided Atex with false information about its evaluation of Atex's keyboards.

■■■ In their second argument, the plaintiffs contend that even if there was no agreement between the parties to act tortiously, Kodak may be liable under the concerted action theory by providing "substantial assistance or encouragement" to Atex in furtherance of its tortious conduct. A "substantial assistance" claim based on § 876 of the Restatement (Second) of Torts requires evidence that (1) the defendant knows that the other's conduct constitutes a breach of

---

1. "Ergonomics is the study of the design of requirements of work in relation to the physical and psychological capabilities and limitations of people.... The aim of the discipline is to prevent the development of occupational disorders and to reduce the potential for fatigue, error, or unsafe acts through the evaluation and design of facilities, environments, jobs, tasks, tools, equipment, processes, and training methods to match the capabilities of specific workers." *See* 57 Fed.Reg. 34192, 34199 app. A (Aug. 3, 1992) (OSHA advance notice of proposed rulemaking on ergonomics safety).

duty and (2) the defendant gives substantial assistance or encouragement to the other's conduct. RESTATEMENT (SECOND) OF TORTS § 876(b).

We find that, viewed in the light most favorable to the plaintiffs, Kodak's general awareness of the hazards of repetitive stress injuries and the Kodak laboratory's evaluation of the Atex keyboards in 1990 are insufficient to raise a question of material fact regarding Kodak's knowledge of or substantial assistance in Atex's allegedly tortious conduct. Kodak's knowledge about repetitive stress injuries generally cannot be construed as knowledge of the alleged defective design of the Atex keyboard or Atex's alleged failure to warn keyboard users of the hazards of repetitive stress injuries. Furthermore, the plaintiffs have offered no evidence to contradict the defendant's assertions that Kodak's one-time evaluation of the keyboards in 1990 occurred years after the keyboards in question were designed and distributed. Finally, the plaintiffs present no evidence to suggest that Kodak was involved—either before or after the 1990 evaluation—in the decision to include warnings about repetitive stress disorders or user guidelines with Atex keyboards. Thus, we find that summary judgment on this claim was also appropriate.

### III. CONCLUSION

To summarize:

We affirm the district court's order granting summary judgment for the defendant on each of the plaintiffs' four theories of liability.

1. We agree with the district court's conclusion that the defendant was entitled to summary judgment on the plaintiffs' alter ego theory of liability. The collateral estoppel doctrine does not preclude relitigation of the question of Kodak's domination over Atex because the state court's finding of material facts in dispute was not essential to its judgment and because the defendant did not have a full and fair opportunity to litigate the issue. The elements identified by the plaintiffs were insufficient to raise a material is-

sue of fact regarding domination, and further, the plaintiffs failed to offer evidence of injustice that would justify disregarding Atex's corporate form.

2. We affirm the district court's conclusion that the defendant was entitled to summary judgment on the plaintiffs' agency theory of liability because the plaintiffs offered no evidence that Kodak authorized or appeared to authorize Atex to act on its behalf in the manufacturing and marketing of keyboards or that the plaintiffs relied on the documents in question.

3. We agree with the district court's conclusion that the defendant was entitled to summary judgment on the plaintiffs' apparent manufacturer theory of liability on the ground that, under New York law, a parent cannot be liable as an apparent manufacturer where it was not the seller or the distributor of the product.

4. Finally, we agree with the district court's conclusion that the defendant was entitled to summary judgment on the plaintiffs' concerted tortious action theory. We also affirm the court's finding that the plaintiffs offered no evidence that Kodak and Atex had an agreement to commit a tortious act. Finally, we find that there was no evidence to support the plaintiffs' theory that Kodak provided "substantial assistance or encouragement" to Atex in furtherance of its allegedly tortious conduct.